MITHOFF v. TOWN OF CARROLLTON—McCAUGHAN v. THE SAME.

Under the law which prescribes the obligation of proprietors of lands bordering upon the river to suffer the servitude of a levee for the use of the public, the soil alone owes the servitude.

When, for the public safety, it becomes necessary to construct the levee on ground on which buildings had been erected by the proprietors of the soil at a time when no immediate servitude was due the public, and the buildings are demolished for that purpose, the owners are entitled to be compensated for their value, to be estimated at the time they were taken for public purposes.

APPEAL from the District Court of the parish of Jefferson, *Burthe*, J. *Durant & Hornor*, for plaintiff. *C. Roselius* and *F. Preston*, for defendants and appellants.

MERRICK, C. J. We see no error in the rulings of the court, as shown by the bills of exception under the pleadings in this case.

This case is distinguished from the case of *Dubose* against the Levee Commissioners, in this: that the town of Carrollton deemed it necessary to the public safety and convenience, that the houses of the plaintiffs on the line of the new levee should be torn down, and passed an ordinance for that purpose, which was carried into effect. In the *Dubose* case, the houses were left standing and the levee was built in the rear of them.

The plaintiffs in the lower court obtained judgment for the value of their houses and the land, as taken for public purposes. The defendants appealed.

It is contended by the defendant, that the case of *Dubose* is decisive of this, and that the plaintiffs are not entitled to recover either for the land or the houses which were demolished.

Whilst we acknowledge the correctness of the decision in the *Dubose* case, we think a distinction must be made between the resumption of servitude, which the soil upon the banks of the Mississippi river alone owes to the public, and the destruction of buildings (placed upon the soil before the servitude becomes due,) in order to arrive at the use of such servitude.

At the time the owners of the lots, for which compensation is claimed, built upon them, they owed no immediate servitude to the public of any kind. When they erected the buildings upon them, they had the undoubted right to build in such form and manner as they pleased. They were at liberty to put up buildings costly or plain, according to their fancy, whatever that fancy might be. When so erected, the buildings were *theirs* in the highest sense of the term, and the property thereof being vested in them, as such owners they were protected from an expropriation in order to arrive at the servitude which the soil alone came to owe, by the constitution, which requires compensation to be made in such cases ; Art. 105. By the wearing away of the bank of the river, the safety of the public required the houses of *Mithoff* and *Robbins* to be demolished and a levee to be constructed over the ground occupied by their buildings. Their land, therefore, by virtue of its location and vicinity to the river, became bound, under the laws which prescribed the obligation of proprietors of lands bordering upon the river, to suffer the servitue of the levee and nothing more. The buildings had not been put up in violation of any law, and they could not be removed from the soil without compensating the owners for them. The town authorities might, as was done in the *Dubose* case, have run the levee behind

24

these buildings, or in front, so as not to obstruct them absolutely, and the proprietors could not complain. But, when the public, by its proper authorities, chose to pull down the houses, it took from the owners something more than the mere servitude, which was due by the soil: it took a part of the property itself, for which the defendant owes the plaintiff compensation. Art. 105 Constitution 1852.

In *Mithoff's* case, the Judge of the lower court has expressed his opinion upon the value of the house, which we adopt. He estimates the value of the house at $600. The materials sold for $60. There should be judgment in favor of *Mithoff* for $540.

In the case of *McCaughan*, who is the assignee of *Robbin's* claim against the town of Carrollton, the Judge of the lower court has not favored us with the calculation upon which his decree is based. Nor has the plaintiff introduced that certain evidence which was in his power. One of his witnesses says the cost of the buildings on *Robbin's* lots was $11,950. Another says they were worth seven or eight thousand dollars ; but he was never inside the buildings. One of defendant's witnesses, the Mayor of Carrollton, says, that he assessed *Robbin's* improvements at $3000 or 3500 ; but, like plaintiff's witness, he had not been inside of *Robbin's* houses.

The proof is quite clear, that the property of both *Mithoff* and *Robbins* was greatly depreciated by the caving of the bank for some years in front, and the apprehension of a further removal back of the levee. This depreciation of plaintiff's property was the act of God, and they cannot call upon the defendants to indemnify them for it. All the plaintiffs can require is an indemnity for *the value* of their houses taken for public purposes *at the time* they were so taken.

From all the testimony, we think the estimate of the Mayor nearer the truth than the other witnesses, who seem to have testified not so much to the relative situation and value of the houses, as to their value aside from their situation. We think $3250 the relative value of *Robbin's* improvements at the time his houses were removed and the levee built.

The statues, it appears from the testimony, were in a mutilated condition before they were set up by *Robbins*, and there is no reason to suppose that they were much injured by the removal, or that they added much to the value of the property.

The witness *Purcell's* testimony was only conjectural ; he never having seen the statues in their perfect state. As they were not in that condition when placed on the property, the testimony of the witness possesses no value as the basis for the assessment of damages.

Taking the value of *Robbins'* improvements at $3250, and deducting therefrom $325, the value of the materials sold by *Robbins*, and it leaves $2925, for which the plaintiff, *McCaughan*, is entitled to judgment.

It is, therefore, ordered, adjudged and decreed, that the judgment appealed from in these cases be avoided and reversed, and now proceeding to render such judgment as ought to have been rendered by the lower court in both cases, it is ordered, adjudged and decreed by the court, that the plaintiff, *William Mithoff*, do recover and have judgment against the said defendant, the said town of Carrollton, for the sum of five hundred and forty dollars ; and it is further ordered, adjudged and decreed, that said plaintiff, *J. J. McCaughan*, do recover and have judgment against the same defendant, said town of Carrollton,

for the sum of two thousand nine hundred and twenty-five dollars, and it is further ordered, that the said *Mithoff* and *Caughan* each pay one half of the costs of the appeal, and that the defendant pay the costs of the lower court.

SPOFFORD, J., dissenting, and LEA, J., dissenting.   We are unanimous in adhering to the doctrine of the recent case of *Dubose* v. *The Levee Commissioners*, 11 An. 165. It was there settled, that the law concerning the expropriation of private property for public use, does not apply to such lands upon the banks of navigable rivers, as may be found necessary for levee purposes, and that there is no arbitrary limit fixed by law as the maximum distance at which a levee may be placed back of a caving bank.

"On the borders of the Mississippi river where there are levees, the levees shall form the banks."   C. C. 448.

An enlarged discretion upon the subject of the location of levees is vested by law in the authorities of each levee district; not, it is true, an absolute and uncontrolled discretion, but one with which the courts will reluctantly interfere, and only upon a clear showing of an abuse of power by the local authorities.

In this case the District Judge found no oppression or abuse of authority on the part of the town officers of Carrollton; in his reasons for judgment he conconcedes the necessity of the construction of the new levee, which the plaintiffs contend has injured them so much, and it results from his opinion that he thought the levee was properly located. In this respect I see no reason to doubt the correctness of his conclusions.

But, in awarding damages, the Judge based his decree solely upon the legal ground, that the plaintiff's land owed no servitude to the public, because they did not buy with a *front on the river*; and, in this court, the case has been mainly argued on that ground.

The soundness of this distinction cannot be admitted, for the reason, that it is impossible to confine the Mississippi river to its primitive bed.

The banks of navigable rivers, and especially of the Mississippi, in this latitude, are constantly undergoing changes by attrition on one side and accretion on the other.   If, in the course of time, they reach the land of a proprietor who did not buy originally with a front on the river, he becomes, by that fact alone, subject to all the servitudes imposed by law upon front proprietors; C. C. 446, 661.   As well might it be contended, that the government is bound to warrant such a proprietor against the action of the elements and the encroachments of the river upon his lands, as that he should be exempted from contributing to the public utility, by yielding his land for levee purposes, without compensation, when the advancing tide makes such a protection necessary.

And it results, as a logical inference, that when the houses he has built are upon land thus invaded by the stream and rendered indispensible to be used for levee purposes, they too, like the land on which they are built and of which they form a part, should be yielded up to the public service, without compensation, for it is not the act of man, but the act of God and the law which causes their demolition.   By the location of the new levee (if it be lawfully and properly located) it becomes, under Article 448 of the Code, the river bank and no man's houses shall obstruct the bank.   Their destruction is necessary to the exercise of the servitude; or rather, it becomes a part of the servitude.   I am, therefore, of the opinion that, under the general principles of law which were recognized and enforced in the *Dubose* case, the plaintiffs are entitled to no compensation whatever for their land, nor for such of their houses as stood

MITHOFF<br>*v.*<br>CARROLLTON.

directly upon the line of the new levee, as located by the town authorities of Carrollton ; it being conceded, or at any rate not disproved, that the levee was properly run where it now stands.

A question of greater difficulty remains. It would seem, that some of the buildings (of the number and value of which there is no evidence in the record) were not directly upon the line of the new levee, but might have been left standing, as in the *Dubose* case, between the levee and the river.

The question of compensation, in regard to these buildings, differs from the question as to the other houses by reason of some peculiar provisions of the Civil Code. It is true, that the space between the levee and the river should not be so obstructed as to interfere with commerce ; C. C. 446, 661. But I think such of the buildings as might have been left standing after the construction of the levee in its present locality, should have been left until the proprietor chose to destroy them, or until they fell by their own decay ; and this opinion seems to be sustained by the following Articles of the Civil Code :

" Works which have been formerly built on public places, or in the beds of rivers or navigable streams, *or on their banks*, and which obstruct or embarrass the use of these places, rivers, streams, or their banks, may be destroyed at the expense of those who claim them, at the instance of the corporation of the place, or of any individual of full age residing in the place where they are situated. And the owner of these works cannot prevent their being destroyed under pretext of any prescription or possession, even immemorial, which he may have had of it, if it be proved that *at the time these works were constructed* the soil on which they are built was public, and has not ceased to be so since." Civil Code 858.

There is an evident implication that, if it be not proved that the soil was not public at the time the works were built, the owner may prevent their destruction.

The next Article is even stronger : " If the works formerly constructed on the *public* soil consist of houses or other buildings which cannot be destroyed without causing signal damage to the owner of them, and if these houses or other buildings merely encroached upon the public way without preventing its use, they shall be permitted to remain ; but the owner shall be bound when he rebuilds them to relinquish that part of the soil or of the public way upon which they formerly stood." C. C. 858.

But the value of the buildings which should have been left, in this case, outside of the levee, and which have been demolished, is to be estimated not at their prime cost, nor yet at their supposed worth before the new levee was built, but by an appraisement of what their value would be with the levee in its present position. For, the necessary depreciation of the property by reason of its being thrown without the protection of the levee, as in the *Dubose* case, is *damnum absque injuriâ ;* the acts of God and of the law injure nobody.

As the number of the buildings which might thus have been saved, and their value in case they had been, cannot be deduced from the evidence in this record. I am of opinion, that the causes should be remanded to ascertain the truth upon these matters.

It appears that the assignor of one of the plaintiffs had embellished his grounds with marble statues of Jupiter, Mars, Diana and Neptune. There is a complaint that these works of art were mutilated and defaced by the carelessness of the town agents when the houses were demolished, and that damages

should be allowed for this. But the evidence shows that they were delapidated and disfigured before the servants of the town laid hands upon them;·and, that they were removed with all the caution that the nature of the case required.

I think, therefore, that the judgment of the District Court should be avoided and reversed, and that the demands of the plaintiffs in these consolidated suits for damages against the town of Carrollton for running a levee across their lands, and demolishing structures immediately upon the line of said levee should be rejected, as also any claim in damages for depreciating the value of their property, by the location of the levee; and that their claim in damages for the demolition of such of their buildings as might have been spared without preventing the construction of the levee in its present position should be recognized, and the causes remanded to the District Court for the purpose of ascertaining the number and assessing the value of such buildings, according to the principles hereinbefore stated.