## No. 10,657.

### LOUIS RUCH VS. CITY OF NEW ORLEANS.

| | |
|---|---|
| 43 | 275 |
| 44 | 1052 |
| 43 | 275 |
| 45 | 423 |
| 43 | 275 |
| 46 | 677 |
| 43 | 275 |
| 49 | 542 |
| 49 | 572 |

1. Servitudes imposed for the public or common utility, relate to the space which is left for the public use by the adjacent proprietor on the shore of a navigable river, and for making and repairing levees, roads, and other public and common works.

2. He who from his title as owner is bound to give a public road on the border of a navigable water course, must furnish another without compensation if the first be destroyed or carried away; and if the road be so injured, without being carried away, that it becomes impassable, the owner is obliged to give the public a passage way on his lands as near as possible to the public road without compensation.

3. A municipality in this State may acquire *jure alluvionis*, but it must be as front or riparian proprietor of an estate. For, if batture be formed in front of any *locus publicus* of the municipality it does not attach thereto and become accretionary property of the municipality, for the *locus publicus* is a place left open for the conveniences of commerce, and for the use of the whole world—a thing *hors de commerce*, and which is merely subject to administration by the officers of the municipality.

4. The principles of the Civil Code relative to rural riparian estates situated upon the borders of navigable water courses in the State generally, have been extended by statutes to the cities and towns in this State, and same have been frequently expounded by the decisions of this court.

5. The right of *appropriation* which is recognized in the Civil Code was co-existent with the right of *expropriation* which is also provided for therein. All of those provisions pre-existed the Constitution. The right of appropriation exists independently of the provision of the Constitution restricting the exercise of the power of eminent domain, and which do not relate to the police power, which is an inherent and reserved power of the State and subject to legislative control.

APPEAL from the Civil District Court for the Parish of Orleans. *Voorhies, J.*

*Rice & Armstrong*, for Plaintiff and Appellee:

1. The city may be, as well as an individual, front proprietor. Mayor vs. U. S., 10 Peters 717; Mun. No. 2 vs. Orleans Cotton Press, 18 La. 122.

2. The city, in the present instance, owns all the land in front of plaintiff's fence. Ferriere vs. City, 35 An. 211; City of New Orleans, praying, etc., 20 An. 394.

3. Even under the rule as to rural servitudes, the owner of the river bank alone owes the servitude of a levee and public road, and is entitled to accretions. Morgan vs. Livingston, 6 Mart. 19, 222, 236; C. C. 457, 707; see also Mun. No. 2 vs. Cotton Press, 18 La. 256, 276, 268; Gravier vs. Mayor, quoted in 18 La. 210; Bass vs. State, 34 An. 494.

4. The rear estate has no accretions, and owes no servitude of public road or levee, so long as the front estate is in existence. The rear estate becomes the front estate only when the front estate is entirely carried away. Morgan vs. Livingston, 6 Mart. 222, 226; Ferriere vs. City, 35 An. 211; Cambre vs. Kohn, 8 N. S. 575, 576; Give vs. Rightor, 11 La. 141, 142.

5. Even the riparian estate does not owe the servitude of a public sidewalk.

6. The history of the river bank and street in question; the payment by the city for portions of land taken in the immediate locality for the same purpose; the declared necessity for public uses expressed in the resolutions authorizing the Mayor and Commissioner of Public Works, and instructing the City Attorney, similar in every respect to the resolution of 1866; the introduction of the resolutions in the council by Delavigne, who had been already paid for his property, evidence the city's intention to expropriate, and not confiscate, plaintiff's property. City of New Orleans, praying, etc., 20 An. 394.

7. Private property can not be taken for public uses without fair and just compensation therefor, first paid, with damages, if any; Const of State, Arts. 155, 156; C. C. Arts. 2626-2641; 7 An. 72; 7 An. 76; 28 An. 64, 171.

*Sam'l L. Gilmore*, Assistant City Attorney, and *Carleton Hunt*, City Attorney, for Defendant and Appellant:

1. All landed proprietors, whose property is adjacent to a navigable stream, hold it subject to certain conditions imposed for common utility. Dubose vs. Levee Commissioners, 11 An. 166; Bass vs. State, 34 An. 498.

2. Such proprietors are bound to surrender to public use, without compensation, a portion of the front of their property, sufficient for roadway purposes, and in case the road be destroyed or carried away they must furnish another. If there be upon their lands works which obstruct the making of the road, these works may be removed at their expense, at the instance of the corporation of the place. Arts. 509, 665, 707 and 861, R. C. C.; Hanson vs. Lafayette, 18 L. 308; Bass vs. State, 34 An. 498; Watson vs. Turnbull, 34 An. 857.

3. The intervention of a public road between the front estate and the river does not deprive the front estate of its character of riparian property. Morgan vs. Livingston, 6 M. 231-233; Municipality No. 2 vs. Orleans Cotton Press, 18 La. 227-8, 237-9, 243-4, 247.

4. The streets of the city are not the property of the corporation, she having no ownership of, but only a right of administration over them. Daublin vs. Mayor, 1 M. 187; Shepherd vs. Municipality No. 3, 6 R. 349; Heirs of Leonard vs. Baton Rouge, 39 An. 273.

5. The question of whether property is a riparian estate is to be determined by its present location. If it is now adjacent to the river, no land susceptible of private use intervening between it and the water, it is a riparian estate. The case of Attius, cited in Morgan vs. Livingston, 6 M. 63; Bass vs. State, 34 An. 498.

6. The amount of land to be taken for the front road is a matter of police or administration to be decided by the local authorities. Bass vs. State, 34 An. 498.

The opinion of the court was delivered by

WATKINS, J. The object of this action is to restrain the city from *appropriating* a portion of his property, which fronts on Peters street in said city, for the purpose of enlarging the street or public roadway, if same be needed for such purposes, without making previous adequate compensation therefor, in pursuance of the *expropriation* laws of this State.

Plaintiff's averment is, that his lot measures 285 feet and 9 inches *on the public road*, or Peters street, and has a depth of 1030 feet; and that the city authorities propose to take therefrom, for the purpose stated, and from its entire width, a quantity of land of the depth of 22 706-1000 feet on the upper line, and of the depth of 33 33-100 feet on the lower line, aggregating a total superficies of 8059 square feet. That said property is his place of residence, and thereon is situated his dwelling and other buildings, improvements and appurtenances; and that the portion proposed to be taken for the opening or widening of a public street or roadway has upon it a fence with solid brick foundation, and many valuable ornamental and fruit trees, and a large variety of plants and shrubbery.

That this portion is the most valuable part of his property, and that the deprivation of it, coupled with the corresponding injury that will be occasioned by it to the remainder thereof, will cause him damage to the amount of $3500. That the city proposes to take and *appropriate* the same, without first taking due and proper *expropriation* proceedings, and without just and adequate compensation therefor, previously paid. That without such prior compensation, the taking of his property for the purpose intended is without the sanction of the law, and the ordinance of the City Council authorizing it violates the fourteenth amendment of the United States Constitution, and also the 155th and 156th Articles of the Constitution of this State.

It is a fact admitted by the plaintiff, and shown by the sketch furnished by the City Surveyor, and other evidence, that the *locus* fronts the Mississippi river, a navigable water course, and that Peters street is the public roadway or thoroughfare adjacent to the public levee, which is on the bank of the river; and the plaintiff insists that his title from Tiblier describes the property as having a measurement of so many feet front *on the public road*, by a depth of so many feet, and that it does not call for any *batture;* that his property does not, therefore, enjoy any accretionary rights, and can not have imposed upon it any riparian burdens.

While it is not averred in the petition, it is asserted in argument that in 1866, prior to the date of his acquisition thereof, the city instituted suit against his vendor, Tiblier, in pursuance of an ordinance of the City Council, to expropriate a portion of the front of this property, and thereunder did expropriate a portion thereof, fronting

on Peters street, of the full width of the premises and of a mean dept of sixty-seven feet; that for and in consideration of just and adequate compensation paid therefor, the city acquired a fee simple title to the property expropriated; and that the land thus acquired by the city was used for the purposes of a new levee, which was constructed thereon, the opening or enlarging of the street or roadway, and the construction of a sidewalk. Founded on this fact—and it is a fact—the contention of plaintiff's is that the city was, at the date of his purchase of Tiblier in 1871, owner of the road or street and the ground on which the levee was built, and therefore entitled to accretion or batture formations, and upon her were imposed all riparian burdens; and that, in case a greater quantity of land was needed for the purpose of further enlarging the roadway, her only recourse is to *other expropriation* proceedings against the plaintiff, and payment to him, as it had made to Tiblier, of adequate compensation therefor.

The defendant's answer is a general denial. On the trial, judgment went against the city, perpetuating plaintiff's injunction, and the city has appealed.

The judge below, in his reasons for judgment, adopted plaintiff's theory, and held substantially:

1. That plaintiff purchased property fronting *on Peters street*, the public road along the banks of the Mississippi river.

2. That owing to encroachments by the river the greater portion of this street has been absorbed for levee purposes, thus necessitating the enlargement of the thoroughfare.

3. That as, under the provisions of R. C. C. 457, the levees on the borders of the Mississippi river form the banks, *plaintiff is a riparian owner unless the intervening* street be the riparian *estate.* [*Italics ours.*]

4. That " the city, for the purpose of opening Peters street, had in the past seen fit to institute expropriation proceedings, and for a valuable consideration become the *owner of the soil* upon which she opened the street." Hence, " she is the riparian owner entitled to all accretions which may happen on the river front, and consequently liable for corresponding obligations." R. C. C. 707.

5. That "plaintiff having no riparian rights, can not be required to furnish another road without any compensation if the first be destroyed or carried away." R. C. C. 2626, *et seq.*

In her application for a new trial the city denied that she ever became proprietor of the soil by virtue of the expropriation proceedings of 1866, or that she thereby became a riparian owner, chargeable with riparian burdens, such as the servitude of way.

On this statement of the case we have for decision two questions: first, whether the city is the front proprietor and chargeable with riparian burdens, and must, therefore, expropriate plaintiff's property for the enlargement of the public roadway on the Mississippi river front and compensate him therefor; second, whether the city ordinance involved is unconstitutional in the sense of the State and Federal constitutions.

I.

The pertinent facts are correctly outlined in part in the foregoing summarized statement; and it is only necessary to state the additional fact that is shown by the record, that between the levee and plaintiff's property in some places there is an insufficient space for a public roadway, and for the convenient and free use of the public, and that it frequently happens that conveyances are on that account compelled to pass around the square.

The provisions of the Code are, that " he who, from his title as owner, is bound to give a public road on the border of a river or stream, must furnish another *without compensation*, if the first be destroyed or carried away;" and it further provides that " if the road be so injured    *    *    *    without being carried away, that it becomes impassable, the owner is obliged to give the public a passageway on his lands, as near as possible to the public road, without recompense therefor." R. C. C. 707. [Italics ours.]

Other articles of the Code indicate what title as owner binds the proprietor to give a public road. For instance, " that servitudes imposed for the public, or common utility, relate to the space which is left for the public use, by the adjacent proprietors on the shores of navigable rivers, and for making and repairing levees, roads and other public or common works." R. C. C. 665.

The title of the Code which contains these articles treats of servitudes on land, or such as are imposed upon owners of estates, in favor of those adjacent or of the public.

The servitude which is imposed upon an estate for the public or common utility, is the levee or public road which may be erected on the shores of a navigable watercourse.

Inasmuch as the Code declares that the adjacent proprietor of an estate situated on the shores of a navigable river must leave a space open for public use, for the making and repairing of levees, public roads and the like, that such proprietor must furnish another roadway, without compensation, if the first one be destroyed or carried away, or if it be so much injured that it has become impassable, it is clear that by the expropriation proceedings in 1866 the city acquired no greater right or better title to the public roadway or upon the adjacent estate than that she possessed under the law.

In point of fact, the city did not acquire an *estate*, only the public roadway on the river bank.

The contention of plaintiff's counsel that she acquired a fee simple title to the soil, and thus became proprietor, leads to a confusion of terms; for a roadway and a levee are mere servitudes which are imposed upon estates, and are not themselves estates or properties of a marketable or commercial character.

To say that, by the expropriation proceedings of 1866, the city became owner of a public road on the banks of the Mississippi river, in front of plaintiff's property, is to say she purchased what she was entitled to *take without any compensation*. But she did not thereby become the riparian proprietor, and batture formations could not attach to such an acquisition; and the fact that she did expropriate and pay for one roadway could not impose upon her the obligation to expropriate and pay for another one.

In the expropriation proceedings referred to—*the City of New Orleans praying for a jury of freeholders*, 20 An. 394—the court stated that they wished it distinctly understood that they did not consider that case "a precedent as to the mode to be provided and the right involved in making new levees in New Orleans;" and they said: "We decide it simply upon its peculiar pleadings, and do not think the question of servitudes and of the rights and obligations of riparian proprietors are properly raised for decision;" thus completely negativing its value as a precedent in this case.

The right of *appropriation* proceeds upon the principles decided in Remy vs. Second Municipality, 11 An. 161, that the riparian owner enjoys his property *sub modo; i. e.*, subject to the right of the public to reserve space enough for levees, public roads and the like. Over this space the front proprietor never acquires complete dominion. It never passes *free* of this reservation by a deed to a purchaser.

Pecot vs. Police Jury, 41 An. 706; Heirs of Leonard vs. Baton Rouge, 39 An. 275; Morgan vs. Livingston, 6 M. 231; Municipality vs. Cotton Press, 18 La. 239.

And notwithstanding one purchases property, at the time removed from the river bank, he takes title subject to the happening of a contingency necessitating its appropriation, in whole or in part, to the public use.  R. C. C. 707.

In Bass vs. State, 34 An. 494, this question was carefully and exhaustively considered, and, on ample reason and authority, we held that when, by the mutations of the bank, a navigable water course reaches the land of a proprietor, he becomes subject to all the legal servitudes imposed upon those who were *originally* riparian owners; and that " lands thus brought under such servitudes must, like the land of which they form a part, *be yielded up without compensation.*"

That the ownership of riparian estates has been thus subordinated to public use from time immemorial is attested upon the authority of text writers and the French Code.

Domat says "the banks of rivers, highways, etc., are things public, the use of which is common to all particular persons.  *  *  * But it is the sovereign that regulates them." Domat, Sec. 116, p. 150.

The text of the French Code is, "Servitude established for the public benefit or that of the commune, has for its object, footways by the side of navigable rivers  *  *  *  the construction or repairs of roads, and other public works, or those relating to the commune." Code Napoleon, Arts. 650, 556.

As stated by Justinian, "the banks belonged to the proprietor of adjacent soil; but the *use* of them, for the purposes of navigation and *otherwise,* was open to all.  The proprietors, therefore, could alone reap the profits of the soil, but if they attempted to exercise their rights so as to hinder the public use of the bank they would be restrained by the interdict of the prætor." Lib. 11, Tlt. 1, p. 159.

That author ascribes to Cicero the expression, that "the public use of the banks of a river is part of the law of nations, just as that of the river itself."

The principles of the code and the decisions quoted from principally relate to *rural* riparian estates situated on the borders of the various navigable streams of the State, and for many years it was a mooted and difficult question, as the early jurisprudence of this

court will show, whether they should be applied to the municipality of New Orleans. And it was differently decided and left an unsettled question until the Legislature specially extended the precepts of the Code, relative to riparian property generally, to riparian estates within the cities and towns of the State. Accordingly by a legislative enactment in reference to the faubourg St. Mary—a property situated *above* that of the plaintiff and on the same side of the river —it was provided "that the batture, or space of ground adjoining the Mississippi river, and lying between said river and the street * * fronting said river, shall be left open and so kept for the accommodation of the public and the convenience of commerce." Sec. 3, Act 257 of 1850.

That act was supplemented in 1853 by another which provided "that whenever any riparian owner of property in the incorporated towns and cities of this State is entitled to accretion, and batture has been formed in front of said owner's land more than is necessary for public use, which said incorporation withholds from the owner, he shall have a right to institute suit against said incorporation for so much of said batture as may not be necessary for the uses of commerce and navigation, and for *the necessary public highway*, and other public uses, etc." Sec. 1, Act 333 of 1853. .

Construing those statutes and others of similar import our predecessors said in *Remy* vs. *Second Municipality*, 11 An. 161:

"The several acts of the Legislature giving to the city authorities power over the batture were intended to enable them the better to enforce their administrative authority in behalf of the public, who were entitled to the *use* of the batture for the purposes of commerce; they were never intended to change or disturb the rights of property. * * · * . · * * * *: * *

The civil possession of the representatives of Remy was not disturbed by the exercise of the police and administrative powers of the city authorities over the property in question, as they still possessed it in the *only* manner in which any owner could possess property similarly situated."

In that case the court made a special reservation in favor of the city of the " possession, for the purposes of administration, of such portion of the property as may be subject to the servitudes established by existing laws on land fronting on the Mississippi river, within the limits of the City of New Orleans."

It was the same principle which controlled our decisions in Sweeney vs. Shakspeare, 42 An. 614, and Meyers vs. Mathis, 42 An. 471.

And like principles were maintained in Kennedy vs. Municipality, 10 An. 55, and Gaiennie vs. Municipality, 11 An. 738.

They are not inconsistent with those announced in Ferriere vs. City, 35 An. 209, and Donnovan vs. City, 35 An. 461, for they maintain that a sale of a city lot " fronting and ending on the *levee,* and not on the river," does not carry alluvial accretions—a question which does not arise in this case, as already intimated, because plaintiff acquired from Tiblier in 1871 *only* a depth of 1030 feet, while the latter acquired from D'Auquin in 1852 a depth of 1085 feet on one side and 1103 feet on the other, thus demonstrating that plaintiff's property fronted on the river bank, and that there had been no batture formation in front of it during the nineteen years of Tiblier's ownership.

It was doubtless this condition of things that caused expropriation proceedings to be taken against Tiblier in 1866 for the enlargement of the roadway. Hence there is no question in this case of the ownership of batture formations, and it is unnecessary to inquire *where* or *in whom the fee may reside in future* accretions, for it is settled that " the *use* of the batture between the levee and the stream is in the public, the *property* in the soil being in the adjacent proprietor." Barr vs. City, 22 An. 612; Cochrane vs. Fort, 7 N. S. 625; Livingston vs. Herrman, 9 M. 721; Cambre vs. Kohn, 7 N. S. 578; Circe vs. Rightor, 11 La. 140.

### II.

In view of the tenor of our discussion of the first branch of this case, and the authorities cited, it is evident that our conclusion will be that the city was authorized to take the plaintiff's property to the extent same may be required for public use in the enlargement of the public roadway, immediately in front of it, and this she may do in virtue of the right of *appropriation* vested in her by the police power of the State.

This right of *appropriation,* which is recognized in the quoted provisions of the Code, is and was co-existent with the right of *expropriation,* as provided for in R. C. C. 2626, *et seq.,* and R. S., Secs. 1149 *et seq.*

All of those provisions preëxisted the Constitution, with the 155th and 156th articles of which the right of appropriation is said to conflict. This of itself leads to the supposition of their entire compatibility. But the two principles are of well-recognized and ancient origin—one being an exercise of the police power, any loss sustained thereby entitling the injured party to no recompense, the same being *damnum absque injuria;* the other being the exertion of the right of eminent domain, the damages entailed being compensable. Bass vs. State, 34 An. 494; Chaffe vs. Trezevant, 38 An. 746.

The enjoined proceedings were evidently undertaken in pursuance of the police power of the municipality, the object being confessedly the enlargement of the public roadway on the Mississippi river front and within city limits; hence the ordinance was constitutional and valid, for unquestionably the city had ample authority for the enactment of *an* ordinance of the character of the one promulgated. The provisions of the Constitution placing restrictions upon the exercise of the power of *expropriation* have no reference to the *police power* of the State, or of a municipality in the State. The latter is necessarily an inherent and reserved power of a State, and is practically unlimited—and its exercise is subject to legislative control alone.

The objection of unconstitutionality of the city ordinance enjoined is not well taken.

Upon the whole our conclusion is that the judgment appealed from is erroneous and must be reversed.

It is therefore ordered and decreed that the judgment appealed from be annulled and reversed; and it is now ordered and decreed that the plaintiff's injunction be dissolved and his demands rejected, and that the city authorities be decreed entitled to proceed under the ordinance complained of, and in conformity to law and the views herein expressed; and it is finally ordered and decreed that the plaintiff and appellee be taxed with all costs of both courts.