Statement of the Case.
NICHOLLS, C. J.
The plaintiffs are the widow in community and daughter and heir of Charles Sauter.
The prayer of their petition is: That Jacob E. Schelie individually, and the town of Vidalia, through said Schelie as its mayor, the police jury of Concordia parish, and the board of commissioners of the Fifth Levee District, be cited, and that, after due proceedings had, a mandatory injunction issue to the said defendants, and each of them, commanding them and enjoining them forthwith to abate the nuisance (complained of in their petition) and to remove the ramp constructed by them, or by either of them, from the lands of petitioners, and from the public street inside of the levee, and to fill up and grade the said lots so destroyed so that they may be again available for purposes of use and occupation, or that they have judgment against them, and each of them, for the sum of $2,500, the value of said lots so destroyed.
That a mandatory injunction directed to the said J. E. Schelie individually and to the town of Vidalia, commanding- and enjoining them forthwith to proceed to have the Front street of said town inside of the new levee opened from the point at which it now terminates, two blocks below the main thoroughfare from the country to the public landing to the lower line of the town limits, so that their premises may again be accessible for business purposes, and their rental value restored, or that in default thereof they recover the sum of $7,500 as the value of their property so destroyed.
That the said town of Vidalia be required, if there be need for more than one road from the town to the public landing, to open said road or roads on one or more of its own streets leading to the city, and be per *380 petually enjoined from entering or trespassing on their lands for said purposes, except upon adequate compensation first paid.
That they do have and recover judgment against the town of Vidalia et al. and the said X E. Schelie in solido, for the sum of $60 per month from January 1, 1901, as the rental value of their premises so destroyed, until said nuisances are abated. That they be recognized as the owners and entitled to the possession of the original Front street; ’ and general relief in the premises.
They base their demand upon the following allegations:
That before and prior to the injuries which they complain of they were the owners of a certain lot or parcel of ground situated in the town of Vidalia and parish of Concordia, bounded in front by tho public street along the then line of public levee on the Mississippi river, above by Third and below by Fourth streets of said town, and running back to Carter avenue, with all the buildings and improvements thereon, of the value of $10,000, from which they were deriving monthly rents to the amount of $60 per month; and the batture in front of said lots between the Front street and the river, of the width of 210 feet; and through their ancestors and vendors had owned, possessed, and occupied said lands for a period of more than 50 years.
That about the 1st day of October, 1900, the local authorities located a new line of levee along the bank of the Mississippi river in front of the town of Vidalia, and let the contract for the construction of "said work, and petitioners, in compliance with the laws and jurisprudence of the state, surrendered to the public so much of their lots as was required for the base of said levee, and so much as was required for the new public street along the front of the town inside of said levee, and moved back all of their buildings and improvements at a cost of $1,000, to accommodate themselves to the new conditions resulting from the change in the line of the public levee.
That, notwithstanding this ready compliance on the part of petitioners, with all the duties imposed on them in the premises, one Jacob E. Schelie, a resident of your said parish, acting in his official capacity of mayor of said town, but in wanton and malicious abuse of the powers of his office, and with the intent to injure, wrong, and oppress petitioners because they were nonresidents, and had no voice in the politics of said town, instead of having the public streets of the town opened across said new levee to the original Front street and public landing, so as-to afford convenient access without injuring and destroying the property of petitioners, which could have been, and in other cases was, done, maliciously, arbitrarily, and oppressively, although there was already a public road leading from the town to the landing, caused another road to be laid off and constructed, not along the line of the public street at right angles to the levee, but diagonally across the lots of petitioners from Third to Fourth streets, and by a ramp built thus over and across said new levee caused to be dug up and carted away and destroyed the lots of petitioners remaining outside of the new levee, of the value of $2,500.
And that the said Schelie, still acting m his official capacity as mayor aforesaid, but in wanton and malicious abuse of the powers of his office, and with the intent to favor his personal and political friends, and to injure, wrong, and oppress petitioners, instead of causing the public street to be opened inside of the new levee along the front of the town, so that convenient access could be had to the stores and places of business of petitioners, caused the said public street to be opened for only two blocks below the main thoroughfare leading from the country to the public landing, and, because his said personal and political friends would have been subjected to the same inconvenience and expense to which petitioners were subjected of moving back their buildings and improvements, has failed and neglected, and still fails and neglects, to perform his duty in the premises, and has further caused the space left by petitioners for the public street in front of their lots, to be obstructed by the ramp across the levee, so that the property of petitioners is now wholly isolated and cut off from all convenient access to the public for business purposes, and its rental value wholly destroyed, so that from the 1st day of January last petitioners have been unable to procure tenants for their said property, or to derive any rents therefrom.
And that petitioners, as owners of the lots *382 fronting on said street, and of the batture between said street and the river, upon the abandonment of the original Front street by the public, have the right to the ownership and possession of said street so abandoned as compensation in part for the land surrendered by them for the levee and new Front street inside thereof.
I. E. Sehelie individually answered the petition, and, after pleading a general denial, ■ averred: That a ramp was built by the board of commissioners of the Fifth Louisiana Levee District according to a location and survey made by the state board of engineers diagonally across the public levee in front of the property of plaintiffs, but that practically it takes none of plaintiffs’ property. Tbíit said ramp was built by said levee board at its expense. That the same was necessary to the public convenience and to the levee interests of the district, and that it was built at the most convenient place, and where it would do the most good, and the least harm, if any, which is denied, but that, on the contrary, it is an advantage to the plaintiffs’ property.
That the town of Vidalia qualified under Act No. 136, p. 224, of 1898, of the Legislature of the state of Louisiana, prior to the time said ramp was built, and was operating under the provisions of said act at said time, and has since been so operating.
The police jury answered by a general and special averment that it had nothing to do with the ramp or street in any manner, shape, or form.
The board of commissioners of the Fifth Levee District, after pleading the general issue, averred that it built a ramp according to a location and survey made by the state board of engineers, diagonally across the public levee in front of the property of plaintiffs, but that practically it takes none of their property; that said ramp was built by said levee board at its expense; that the same was necessary to the public convenience and to the levee interests of the district, and that it was built at the most convenient-place, and where it would do the most good, and the least harm, if any it did, which is denied, but aver that, on the contrary, it is an advantage to the plaintiffs, and benefits their property.
The district court rendered judgment rejecting plaintiffs’ demand and dismissing their suit, and they appealed.
Opinion.
. This suit is the result of a change of the line of public levee in front of the town of Vidalia by the board of levee commissioners of the Fifth Levee District, and the construction by it of a ramp running diagonally on the inside and outside of that levee, and crossing it between Third and Fourth streets.
The legal right of the board of commissioners to have placed the new levee where it now stands, or to have even placed it still further to the rear, if, in its opinion, the necessities of the situation required this to have been done, is not contested, nor is that of the board to have constructed a ramp leading up to and crossing the new levee at right angles, provided it followed the lines of either Third or Fourth, two of the public streets of the town. It is denied, however, that it had the authority to have constructed it in the manner it was — diagonally—inasmuch as it is contended that it arbitrarily and unnecessarily destroyed the value of plaintiffs’ property in front of and behind the ramp.
The new levee was not located as originally designed by the board. It had been contemplated throwing outside of it more of the town property than was finally thrown out. Modification of the plan was made at the instance of a committee of citizens seeking to minimize private loss and damage as far as this could be done consistently with public safety. The board, though not yielding to the solicitations made to it to the full extent asked, did so to the extent it felt warranted. Neither the action of the committee nor that of the board seems to have been made in the interest of specially favored individuals. The changes made were not all that the committee would have desired. Its influence or control in the matter was measured by what the board felt itself able to grant under existing circumstances.
The change of line as it was originally proposed to have been made, as well as it was finally adopted, unavoidably affected unequally different properties by reason of differing conditions existing as to each upon the river front. Some of the property owners were more fortunate than others. The situation was such as to throw a number of build *384 ings upon the front of the town. Some above and some below the property of the plaintiffs were thrown entirely outside of the new levee; others, though not thrown outside, were left just behind that levee; others had to be entirely taken down and removed in order to make place for its construction. Among those so required to be removed were the buildings upon property belonging to the plaintiffs between Third and Fourth, facing upon what is referred to as “Front Street,” a street running parallel with the river. The people of the town of Vidalia and those of the parish of Concordia, recognizing the hardship entailed upon these special properties by the situation, went to their relief by voluntarily imposing upon themselves a tax for their benefit. The tax was collected, and equitably distributed pro rata. Plaintiffs received their proportion of this tax.
The plaintiffs — as did others — yielded to necessity, took down their houses, and replaced them at very considerable expense in the rear of the new levee. The precise line on which, the plaintiffs replaced their buildings seems to have been selected by themselves, but without knowledge or notice given to them, as they assert, by the board, that it proposed to construct a diagonal ramp on the space which they had left open in front of these buildings for the purposes of a street. Some of the owners of properties just behind the new levee left open in. front of them spaces for a front street; others did not do this, as to have done so would have required the removal of buildings which had been left standing notwithstanding the change in the line of levee; others, though not moving their buildings, constructed a sidewalk between the front lines and the inner line of the new levee. The general result was to leave intact outside of the levee a part of the original front street of the town, but blocked at certain points by the buildings which had been thrown outside of the new levee, but which were left standing there, and to have replaced inside of the new levee the original front street of the town by a new street not running continuously from the upper to the lower limits of the town, as the former front street had done, but extending only for a certain distance, and in front of certain properties, so that persons traveling inside the levee along the new Front street would have, in order to pass over the full length of the town, to turn back from the river at streets running at right angles to it, and resume their course at a street running parallel to the river, but further back. The evidence shows that the construction of the new levee left the ferry landing of the town and the steamboat and warehouse landing outside of it, and that they were reached by prolonging the side streets of the town opposite to them, and crossing the levee through a cut in the levee in the one case, and in the other by passing over a ramp constructed at right angles to the levee. Plaintiffs insist that there were two crossings over the levee, and they were sufficient for all the business purposes of the town; that by the removal of the buildings left standing outside of the levee an open passageway' would have been afforded outside of the levee for the whole length of the town, but, if another were needed at or near Third street by means of a ramp, it should have been constructed at right angles to the levee on the prolongation of Third street, with side wings running along new Front street; that they were entitled to have the space which they had left open for a street in front of their property left entirely open for its full width; that it was a public and private nuisance, and it should be removed. Plaintiffs raised no objections to the ramp until after it had been constructed.
The evidence shows that it was constructed by neither the town nor the parish authorities, but by the state board of levee commissioners with the approval of the state engineers, and, while the ramp may have been constructed partially to subserve the convenience of the people of the town and parish, it was, nevertheless, deemed necessary by them to be built for levee purposes. Their authority over the subject-matter was not limited to the mere building of the levees, but extended to the approaches thereto as a matter incidental thereto. The board could have held the line of the levee to its position as originally contemplated without legal ground of complaint from the hands of the plaintiffs. By doing less and injuring plaintiffs less (if they were injured in fact), they acted within their authority. It is shown that the agents of the plaintiffs objected strongly to the building of the ramp along *386 Third street at right angles to and over the levee. There is nothing in the record going to show that the construction of the ramp diagonally was not the best manner of constructing it for levee purposes. The evidence shows that there is an open space before plaintiffs’ property, by which they can easily pass from Third to Fourth with vehicles, though not as wide a space, perhaps, as they considered to be desirable. Third and Fourth streets on the sides are both open, and there is access also from the rear. Had the construction of the ramp at Third street been by authority of the town authorities, we certainly would not be able to say, under the evidence, that they had acted arbitrarily, or beyond their powers, in the matter.. The people of the town holding properties outside of the new levee and the people of the town and parish inside of the levee below Third street were entitled to have their convenience and their business consulted. Their convenience should not be sacrificed for that of the plaintiffs aloné. “Individual inconvenience” must yield to general public convenience. Civ. Code, arts. 668, 669. That is a matter which the public authorities, and not the courts, have to pass upon, unless under conditions which are not presented in this record.
The plaintiffs contend that the effect of permitting the owners of property just outside and just inside of the new levee to keep their buildings where they were before the levee was changed, and thus cut off a continuous direct open passage just in front and just behind" the new levee from the upper part of the town to their property, is to place almost the entire business from that quarter into the hands of the merchants above, and to greatly injure them; that the public is entitled to a servitude of passage and way along the river front, and they, in their own interest, have the right to compel the municipal authorities to force the opening of a street along the whole river front directly in front of and in the rear of the levee.
The evidence shows that the property outside of the levee on which the buildings have been left standing is not properly batture property, but property held in full absolute ownership, accompanied by actual physical possession of the owners, which had been thrown out by changes in the river front. The town authorities do not consider the possession of these properties outside of the levee needed for the purposes of commerce, nor do the levee authorities consider their presence outside of the levee to be prejudicial to the levee system.
Assuming that the buildings were to some extent encroaching upon the public way, article 862 of the Civil Code declares that, if the works formerly constructed on the public soil consist of houses and other buildings which cannot be destroyed without causing signal damage to the owner of them, and if these houses merely encroach upon the public way without preventing its use, they shall be permitted to remain, but the owner shall be bound, when he rebuilds them, to relinquish that part of the soil or of the public way upon which they formerly stood.
We think that, in the absence of some public necessity, the owners of buildings constructed upon lands belonging to them and in their actual possession, even though subject to a legal servitude, are authorized to retain them where they are, and that the public authorities cannot be mandamused by a private-individual to open a street requiring the destruction of those buildings, in order to sub-serve his private interests from the enforcement of the servitude. A balancing in this, ca se of private interests (if that were permissible) would show that plaintiffs alone seemi to be interested in the opening of the street upon the front. If other parties be concerned in this matter, they have not spoken, or made their wishes known.
Even where public necessity or exigencies require the sacrificing of private rights, the lawmaker seeks to make the burden fall as lightly as possible, and to protect individuals in their property. In the enforcement of the right of eminent domain as to railroads and canals the lawmaker declares (section I486, Rev. St. 1876) the “expropriation shall in no case extend to graveyards, nor the dwelling house, yard, garden and other appurtenances thereof, unless the jury shall find, by their verdict, that the line of railroad or canal cannot be diverted from that proposed by the company without great public loss or inconvenience.”
It is true that lands lying on the border of a river or stream are subject to a legal servitude of passage or way in favor of the pub- *388 lie, and that owners of such lands hold them subject to the servitude (Civ. Code, arts. 665-667); but the existence of this obligation is something other and different from the enforcement of the right by a private individual either separately in his own name or indirectly through mandamus, or the enforcement of the servitude at any particular place by the authorities (Civ. Code, art. 700. See Digests, tit. “Roads and Levees”). Article 665 of the Civil Code declares “that all that relates to this servitude is determined by laws or particular regulations.”
The solicitude felt by the lawmaker touching the protection of owners in the retention of their buildings, even in the enforcement of public servitudes, can be seen in the decisions of this court in Dubose v. Levee Commissioners, 11 La. Ann. 165; Mithoff v. Town of Carrollton, 12 La. Ann. 185.
The only reason assigned by the plaintiffs for the opening of the street is their belief that an open, direct way from the upper part of the town to their property would have the effect of increasing their trade, and the non-opening of the street had prejudiced them in this respect. Whether this be true or not is simply conjectural. Even if plaintiffs do'suffer to some extent, the damages are remote; not direct, but consequential.
Others would suffer greatly more than plaintiffs would gain by the act which they seek to have done. They do not claim to have occasion themselves to go along the river front or to land or ship goods from the levee.
We think that plaintiffs’ demand is neither just nor well founded, and that the judgment of the district court is correct.
For the reasons herein assigned, the judgment appealed from is affirmed.