PROVOSTY, J.
The village of Moreauville, on the bank of Bayou Des Glaises, in the parish of Avoyelles, was incorporated in 1909, under the provisions of Act 136, p. 224, of 1S98, known as the “Lawrason Act.” It had not then the proportions of a metropolis, and much evidence has been taken in this case upon, the point whether it has increased or decreased since. In order to muster the 250 inhabitants required by the statute for incorporation, its limits had to be extended two miles along the bayou. There are a church, a bank, a convent, a public school, a railroad station, three stores, a dago shop, and private residences. These last are mostly along the public road along the bank of the bayou. For streets there are the public road along the bayou, or rather along the levee which is on the hank of the bayou, and two streets perpendicular to it, connecting it with a street parallel to it some distance back, called Railroad avenue or Potato street.
The great flood of 1912 overflowed that country, and did great damage. After its subsidence, it was found necessary to build a new levee along the bayou hank, further back from the bank than the former one, and for obtaining the additional space required for that purpose the front proprietors had to move back such of their fences as the flood had left standing and such of their buildings as were in the way.
Defendant’s property in the village has a frontage of 1700 feet on the bayou. When *1073 the site for the new levee was staked out, he inquired of the state engineer how much space would have to be left for a public road; and the engineer, basing himself, doubtless, upon section 3371 of the Revised Statutes, which is the Act 56 of 1818, requiring public roads to be “at least twenty-five feet” wide, informed him that the space would have to be of that width; and he accordingly moved his fence and buildings back so as to allow that space. Two of the buildings near the road were, as we understand, far enough back already to allow of a space of 22 feet, and he did not move these, deeming that this space was not so narrow but that it could answer the purposes of a public road. His well also encroached somewhat upon this 25-foot space, and he built his fence around it, leaving a space of-feet between it and the foot of the levee.
The present suit is brought in enforcement of an ordinance of the board of aldermen of the village, requiring the front proprietors to leave an open space of 35 feet along their fronts. The allegation of the petition is that this width of 35 feet—
“is necessary to a proper construction and maintenance thereof [of the street or road] and to build and maintain sidewalks along same and to make proper drains and adorn and beautify it, if the authorities should so determine.”
[1] Bayou Des Glaises being a navigable stream, defendant recognizes that there is, inherent in his title to the land, an obligation to leave a space along his front for a levee and public road; but he contends that he has fully satisfied that obligation by what he has already done, and that so far as concerns the buildings and the well, which, though encroaching upon the 25 feet, do not do so to such an extent as to interfere seriously with the road, he is under no obligation to remove them.
This contention as to these encroaching works is unquestionably well founded. C. C. 862; Mithoff v. Town of Carrollton, 12 La. Ann. 185; Sauter v. Town of Vidalia, 110 La. 377, 34 South. 558.
[2] The defendant also challenges the authority of the board of aldermen over the matter of this road. He contends that this road could be laid only by a jury of freeholders under section 3369 of the Revised Statutes, and by order of the police jury of the parish of Avoyelles.
We do not agree with that ■ view. The board of aldermen is by the said statute under which the town is incorporated authorized to exercise “full jurisdiction” in the laying out of streets.
When this public road was included within the legal limits of the village, it became one of the streets of the village, and the jurisdiction or public authority over it passed from the police jury, which has authority over the roads of the parish in general, to the board of aldermen, thus clothed specially with authority over the streets of the village.
[3, 4] The sole question must be as to the width of the space thus to be left open. In the case of Mayor v. Maggioli, 4 La. Ann. 73, this court said;
“The question as to the breadth of land which a municipal corporation has the right to require for the construction of' a road and levee is, within certain limits, an administrative question, to be left to the discretion of local authorities.”
In the case of Dubose v. Levee Commissioners, 11 La. Ann. 167, the court said:
“The quantity of land to be taken for road and levee purposes presents a question of police or administration to be decided by the local authorities, whose decision should not be revised by this tribunal except for the most cogent reasons, and where there has been manifest oppression or injustice.”
In the ease of Cross v. Police Jury, 7 Rob. 121, the court said:
“Proceedings of police juries, relative to public roads involving questions of police rather than of judicial character should be sustained unless manifestly unjust.”
*1075 The ordinance calls for sufficient space for a public road and also for a sidewalk; and, -as has been seen, the allegation of the petition is to the effect that the greater space is needed for a sidewalk, a drain, and for the sake of adornment and embellishment.
On the point of whether the space left open by defendant was not sufficient, much testimony was taken, consisting almost entirely of the opinions of the witnesses. If the concession were made that a greater number of opinions, ■ and weightier, were expressed on the side of plaintiff, this we do not think would help much towards a proper decision of the case; for the question ought to depend upon facts and not upon the more or less biased opinions of witnesses.
The testimony shows that the traveled part of the public road along this bayou is barely 12 to 15 feet. In the record is a photograph, showing a buggy, a 2-horse carriage, a two-horse wagon, six horsemen and one man on foot abreast in the 25-foot space left open by defendant. This proves that the need for more space for a public road is not so very imperative. In fact, from the testimony as a whole we are much impressed that if the village were not taking this property gratis, but were to pay for it, the village fathers might entertain a different opinion of the necessities of the public in the premises. Be all that, however, as it may, the conclusion we have reached is that the decided and positive preponderance of the testimony is that the 25 feet would be all that the public would need for a road, and that this additional space is for a sidewalk and perhaps for a drain; and we are of opinion that the servitude upon defendant’s property 'does not call for space for a sidewalk, but only for a levee and road.
This servitude' is not the same as that by which, according to article 455 of the Code, the banks of rivers are free to the public. It is a very much more onerous one, extending much further inland. That feature of it requiring space for a levee is peculiar to Louisiana. The public road feature is of European origin, and goes back,, we believe, to the Romans. It had its birth in the necessity of there being a towage path along the banks of navigable and flotable water courses, Domat, vol. 2, liv. 2, tit. 8, § 2, art. 9, says that by law the public have a right to a towing path along the banks of navigable waters. For the purposes of this case, we need not go back further in the legal history of the statutory recognition of this servitude than the French Ordinance of 1669, referred.to at page 123, 4 Mart. (O. S.), in the case of Renthorp v. Bourg, to the effect that:
“Owners of estates, bordering on navigable rivers, ought to leave along the banks a space, at least 24 feet wide, for a royal road and towing path.”
In 1818 the Legislature of this state passed Act 56 of that year, now section 3371, R. S., enlarging to “at least 25 feet” the space thus required.
Acquaintance with the origin of this servitude enables us to judge better of its character. From a mere towing path it had grown into a royal road by the time of the settlement of Louisiana. The width then was 24 feet; and early in our statutory law this width was increased to 25 feet. The naming of that width serves to show what legally is considered to be a sufficient width in the absence of special circumstances calling for a greater. In the case at bar this greater width is being demanded for a sidewalk, and perhaps also in part for a drain. A drain is a necessary part of an earth road, and if more space than 25 feet is needed at that place for the proper drainage of the road, the plaintiff is entitled to take it. But we do not think the plaintiff is entitled to take more than what is needed for a public road; the servitude does not cover more than this. It does not cover additional space for a village sidewalk. The spirit and intention of our law in regard to the exercise of this *1077 servitude is expressed by this court in Sauter v. Town of Vidalia, 110 La. 386, 34 South. 561, as follows:
“Even where public necessity or exigencies require the sacrifice of private rights, the lawmaker seeks to make the burden fall as lightly as possible, and to protect individuals in their property. In the enforcement of the right of eminent domain as to railroads and canals the lawmaker declares (section 1486, Rev. Stat.). the ‘expropriation shall in no case extend to graveyards, nor the dwelling house, yard, garden and other appurtenances thereof, unless the jury shall find, by their verdict, that the line of railroad or canal cannot be diverted from that proposed by the company without great public loss or inconvenience.’ ”
[5] The defendant’s property owes at this time the same servitude it owed before the incorpotation of the village, no more. It owes the same servitude that the other property fronting on Bayou Des Glaises outside of the limits of the village owes, no more. This servitude is due, not because the Legislature has said it is due, but because the debt is one inherent in the title to the property. The Legislature is powerless to establish servitudes where none already exist To do so would constitute a taking, or damaging, of private property without compensation previously made, and would be violative of the Constitution. When this village was established, therefore, the servitude upon defendant’s property continued to exist in the same state in which it was before. It was a servitude for a public road along this bayou, no more. '
If, for instance, this village took on a sudden growth, and had need at this place, for the purposes of its commerce, of a space as wide as that which we see on the river front in New Orleans at the head of Canal street, this space could not be taken by virtue of this servitude, but would have to be regularly expropriated; and the Legislature would be powerless to authorize the taking of it without compensation previously made. In other words, the servitude is one of road, and of such works as are usual on the banks of navigable streams.
[6] The ordinance in question in this case does not undertake to fix the width for the road irrespective of the sidewalk; and the present suit is not simply for a public road, but for a space sufficient for a road and a sidewalk, without any fixing of the space needed for the road alone. In this condition of the record, it is not possible for this court to give plaintiff judgment for a road, since the function of fixing the width of the public road belongs to the local authorities and not to the courts. The conclusion reached by the trial court was that the plaintiff had to be nonsuited.
Judgment affirmed. Plaintiff to pay the costs of appeal.