McINNIS, Judge.
Plaintiff alleging ownership of Lot 17, Block 3, North Alexandria, acquired partly by inheritance from a deceased brother and partly by purchase of the interest of her co-heirs, by instrument recorded October 27, 1948, in conveyance records of Rapides Parish, Volume 359, Page 463, alleges that the defendant, City of Alexandria, has taken and appropriated to its own use the east half of the lot, and constantly uses same with its trucks going to and from the city dump, all without color of right and despite repeated protests, and demands that defendant cease to so use her property or to pay her therefor. She demands $400; claimed to be the value of the property.
The answer is a general denial of the allegations of- the petition, and further answering defendant denies it has taken or appropriated the east half of Lot 17; that a northeast portion of the lot is occupied by a levee along the banks of Red River, which was not constructed by defendant; that at the toe of the levee is a small strip of ground which follows the meanders of the levee, and is used as a street or highway, and has been so used for many years, ever since the levee was constructed; that its use is not limited to the garbage trucks, but is open to the public, and is a public highway; that it was such before being taken into the city limits, and that the public had a right to the use of said strip of ground for road purposes; that there was not at any time any appropriation of said property by the City, and all that the City has done is to put some gravel on the road for the purpose of making it more passable for vehicles using it as a road or street.
After trial on the merits, the district judge, in a well-considered written opinion, rendered judgment rejecting plaintiff’s demand, and she has perfected -a devolutive appeal to this court.
The finding of fact by the district judge appears to be in accord with the record, and we adopt his finding of fact as follows:
*588 “It appears plainly from the evidence that Mrs. Davis acquired Lot 17 following the death of her brother in 1936. This brother had granted the proper authority to the Levee Board for the construction of this-levee, in-reality a set-back levee, and it was built before his death. Before this work was done Lot 17 was bounded on the east by Broad Street. After it was completed, the northeast corner and part of the eastern side of the lot running south from this northeast corner were under the levee- base. Broad Street was completely closed by the levee setback at 'a point near the southeast corner of Lot 17. It is from this latter corner, or very near it, that the roadway complained of commences and thence runs along the levee entirely across the eastern end of plaintiff’s lot.
“It further appears that whatever work was done on the roadway by defendant was done at about the time plaintiff granted defendant an easement for the placing of a sewer line across the eastern end of her property and the actual- installation of this utility, which runs under the western shoulder of the roadway. Alongside this shoulder is a small ditch, surmised by Mrs. Davis to have been excavated by the city, it being approximately four to five feet wide and about four feet deep, She complains that the ditch and the thoroughfare have taken up an estimated 40 to SO feet of her property.
“Plaintiff testified that before the roadway was conditioned by the city, traffic going north could go no further than her lot because of the holes and ditches along the levee’s base. George Bowden, a general real estate agent and Mayor of Alexandria from 1941 to 1945 testified that when he went out of office plaintiff’s property had not been taken into the city limits and there was no road or street alongside her lot.
“Henry Bordelon, a member of defendant’s engineering department, testified that the distance from the northeast corner of plaintiff’s lot under the levee to the east boundary of the sewer line grant is 48.47 feet. The roadway itself varies in width from nineteen to twenty-one feet, exclusive of the shoulder and ditch, which has an average depth of one-half foot, and it is his conjecture that it was dug for drainage or seepage, inferring it seems, that it was not excavated by the city.
“Soule Butler, City Engineer since December 1944, testified that the area embracing plaintiff’s lot came into the city limits in 1916. The sewer line is built on the levee berm, which he described and defines in these words: 'The berm is a portion of the levee proper which is very often used with varying heights of levees and varying types of soils. It is a means of adding additional lateral support to the levee and is usually constructed at an elevation, a uniform elevation along the levee.’ Also: ‘The berm is the area where the roadway is. In other words, it is the embankment superimposed on the natural ground towards the levee proper and the point where the berm meets the natural ground.’
“The city’s work on the roadway consisted of filling in holes with sand, brick and stones, and in adding a surfacing material, not specified, but which, from the photographs in the record, appears to be gravel. • The berm itself, except for the mentioned work, is in the same condition it has always been in, the only dirt work having been done in connection with the sewer line excavation. He observed evidence of travel on the berm prior to the city’s work on the roadway.
“Mr. Buffer conducted the negotiations with Mrs. Davis for the ■ sewer line easement, explaining that he personally felt it necessary to obtain the document, although the project was to be installed on the levee berm, as he recognized Mrs. Davis’ ownership of the ground under the levee and berm, *589 subject to the prior grant to the Levee Board for the erection of the levee.
“The easement to the defendant city for the sewer line is not dated but it was recorded on October 27, 1948. It grants a strip of ground 10 feet wide, the center line of which begins at a point on Oak Street 48.47 feet from the northeast corner on Lot 17 and runs in a southeasterly direction across the lot to a point on its east line 7.62 feet distant from its southeast corner.
“The instrument granting authority to the Levee Board to construct the set-back levee was not put in evidence, thereby leaving undetermined the issue of whether the berm on which the roadway is situated occupies an area within the grant.” ;
We add to this ' finding of fact by the district judge, that documents filed in the record disclose that a plat labeled “North Alexandria”, dated November 16, 1901 shows Block 3 to be approximately 383 feet by 450 feet, and another plat dated June 5, 1904, labeled “Subdivision of Block 3, North Alexandria” whereon Block 3 is' divided into lots, a street and alleys, and Lot 17, 100 feet by 106 feet, is on the corner of Oak and Broad Streets. These plats were prepared before the levee as presently located had been built. Another plat prepared by the Alexandria City Engineer October 20, 1947. shows the sewer line for which the City obtained an easement, and the levee as it is presently located, across both Broad and Oak Streets, and across the northeast corner of Lot 17. Shown also is the road or street running into Broad Street and across Oak Street, west of the place where it intersected Broad Street, before the levee was built.
The contention of counsel that plaintiff is entitled to recover judgment in this case is not supported by the authorities cited, all of which involve railroad servitudes. Gumbel v. New Orleans Terminal Co., 186 La. 882, 173 So. 518 is a petitory action in which plaintiff was recognized as the owner of the property claimed, subject to a servitude in favor of defendant. On appeal by plaintiff the judgment was affirmed, except that plaintiff was taxed with all the costs. The other cases cited by plaintiff are cited in the Gumbel case, and no useful purpose would be served by repeating them here.
We are impressed with the view that the provisions of Articles 457 and 665, LSA-C.C., and the interpretation placed upon them in Ruch v. City of New Orleans, 43 La.Ann. 275, 9 So. 473; Sauter v. Town of Vidalia, 110 La. 377, 34 So. 558; Village of Moreauville v. Boyer, 138 La. 1070, 71 So. 187 and Pizanie v. Gauthreaux, 173 La. 737, 138 So. 650, and other cases from this jurisdiction and from the Federal Courts, are decisive of the issues in the instant case;
These articles of the LSA-Civil Code read as follows:
“The banks of a river or stream are understood to be that which contains it in its ordinary state of high water; for the nature of the banks does not change, although for some cause they may be overflowed for a time.
“Nevertheless on the borders of the Mississippi and other navigable streams, where there are levees, established according to law, the levees shall form the banks.”
And:
“Servitudes imposed for the public or common utility, relate to the space which is to be left for the public use by the adjacent proprietors on the shores of navigable rivers, and. for the making and repairing of levees, roads and other public or common works.
“All that relates to this kind of servitude is determined by laws or particular regulations.”
The City makes no claim of ownership of the property of plaintiff, but only the right of passage for the. public, under the provisions of law cited above.
For these reasons the judgment of the lower court is affirmed at the cost of plaintiff in both courts.