PONDER, Justice.
 

 The plaintiff has appealed from a judgment rejecting its demands. After careful consideration of the record, the briefs of the opposing counsel and the arguments advanced on the appeal, we have arrived at the conclusion that the .judgment should be affirmed. The trial judge in his written reasons for judgment has correctly stated all the issues in the case and properly disposed of them. We, therefore, adopt his reasons for judgment as our opinion in this case, which are as follows:
 

 “As a result of the increase in population of the City of Lake Charles, and the attendant residential and commercial expansion, the sewerage plant facilities of the First Sewerage District of the City of Lake Charles (hereinafter called Plaintiff Board) were proposed to be enlarged and improved. Accordingly, the City Council of the City of Lake Charles (hereinafter called Defendant City), as the governing
 

 authority of the municipality, called an election for the purpose of levying taxes and issuing bonds in the principal sum of $1,500,000.00. This bond issue was approved in 1947 by the qualified electorate.
 

 “Of the approved bond issue, $1,200,000.-00 of bonds were sold by the Defendant City during the month of August, 1947 and the proceeds thereof were delivered to the Plaintiff Board for its administration and use.
 

 “On or about May 12, 1948 the remaining authorized bonds in the principal sum of $300,000.00 were sold. The Defendant City has actually received and is now holding the sum of $303,703.31. Upon receipt of the proceeds from the sale of the remaining issue, as afore-stated, the Defendant City proposes to pay attorney’s fees in the amount of $6,800.00 to Fred C. Selby, the City Attorney, and to thereupon deliver the remaining funds to the Plaintiff Board for such disbursements it deems necessary in consummating the public improvements so authorized. Prior to such payment to the said Fred C. Selby, the Plaintiff Board, invoking the equity arm of the Court, now seeks permanent injunctive relief against the Defendant City, its individual members, the Mayor, the Commissioner of Finance, and the Commissioner of Streets and Parks, to restrain the defendants from paying the said Selby attorney’s fee out of said proceeds and to compel the defendants to turn over to the Plaintiff Board the entirety of the fund, without deductions.
 

 
 *433
 
 "Fred C. Selby was likewise joined as a ■defendant but no injunctive relief is sought against him.
 

 “A temporary restraining order was obtained and is still in effect by agreement ■of all parties.
 

 “On the return day fixed for the rule for the preliminary injunction the defendants filed a motion to dismiss and exceptions of no cause or right of action, contending that ■the Plaintiff Board is being improperly represented by special counsel and therefore is not properly before the Court.
 

 “Subsequent to the return day the defendants filed answer joining issue on the merits, with reservation of their rights on the pending motions and exceptions. On the trial of the merits all issues were submitted and tried.
 

 “Taking up the initial attack levelled at plaintiff’s status in Court, as presented by these motions and exceptions, it is contended that the employment of special counsel to prosecute this suit is violative of applicable statutes, particlarly Act No. 125 of 1912, as amended.
 

 “The pertinent portion of Act No. 125 of 1912, as amended by Act No. 341 of 1938 and Act No. 182 of 1940, is Section 3 of said statute found in Dart’s Volume 5, Section 7409, reading as follows:
 

 “ ‘Resolution of necessity for employ■ment of special counsel.
 
 — No Police Jury, Levee Board, Parish School Board, City School Board or other local or state board shall retain or employ any special attorney or counsel to represent it in any special matter or pay any compensation for any legal services whatever unless a real necessity exists therefor made to appear by a resolution thereof, stating fully the reasons for such action and the compensation to be paid, which resolution shall then be subject to the approval of the Attorney General and shall, if and when approved by him be spread upon the minutes of such body and published in the official journal of the parish.’
 

 “Prior to the filing of this suit the Plaintiff Board met in official special session on June 17, 1948 and adopted a resolution authorizing the employment of S. W. Plauche, attorney, to represent it in the filing of this suit or other legal proceedings as may be necessary, and fixing his compensation. (exhibit “S-7”). A certified copy of this resolution was forwarded to the Attorney General for his approval (transcript P. 46). On June 23, 1948 the written approval of the Attorney General was obtained, the original of which is identified as Exhibit “S-8”. The resolution and approval of the Attorney General were duly published in the official journal of the parish, (exhibit “S-9”).
 

 “Having literally complied with the statutory requirements quoted above, there is no merit to the attack levelled by defendants as to Plaintiff Board’s status in this litigation. Every needful requisite in conformity with the provisions of the stat
 
 *435
 
 ute, supra, were scrupulously observed and as a consequence the special attorney so retained in connection herewith was proper and Plaintiff Board must be held to be eligible to prosecute the demand as presented.
 

 “The motion to quash and the exception of no right or cause of action are accordingly overruled.
 

 “The decisive question here presented is: As the governing authority of the municipality, does the City Council of the City of Lake Charles, in calling and holding an election for the issuance of bonds for sewerage improvements, have the power and authority to contract with special counsel for legal services in connection with all matters involved therein and pertinent thereto and- to pay out of the proceeds realized from the bond sale the contracted attorney’s fees, or is such authority vested exclusively in the Plaintiff Board? The answer of the defendants rests squarely and solely upon the proposition that the City Council of the City of Lake Charles contracted to pay the City Attorney the special compensation in question and that it has the full authority to pay such fee in addition to all other expenses legally incurred in calling, holding the election, and the issuance and the sale of the bonds so authorized.
 

 The First SeWerage District of the City of Lake Charles (Plaintiff Board) was organized in 1909 under the provisions of Act No. 285 of 1908. This statute, the first and comprehensive statute dealing' with the powers and duties of sewerage districts in Louisiana, authorizes the creation of sewerage districts by municipal corporations; grants to such sewerage districts, when created, certain powers; provides for the election of the Board of Sewerage Commissioners and the manner in which the Board shall conduct its affairs; that the members of said Board, shall serve without remuneration and that the City Attorney of the municipality creating the Board shall be ex-officio attorney for the Board and shall serve as such without remuneration. The statute further provides that any election to be held iir such sewerage districts for the incurring of indebtedness and the issuance of negotiable bonds shall be called by the respective sewerage boards.
 

 “The manner and procedure of calling; and holding elections for the purpose of issuing and selling sewerage district bonds' was changed in 1921 by Act No. 46 of the* Extra-ordinary session of that year. This, statute spells out the procedure for holding elections for the purpose of issuing all' types of local improvement bonds in parishes, road districts, sewerage districts, municipalities, gravity drainage districts- and by school boards. The act further expressly declares that the municipal authorities, which in this instance, is the City Council of the City of Lake Charles, shall be the governing authority of sewerage districts within the confines of the munici
 
 *437
 
 •pality. It is specifically declared that as •relates to the calling and holding of elections and the ministerial acts of issuing and selling the bonds, said municipal authorities shall be the governing and controlling authority.
 

 “The next statute we find relating to sewerage boards, in chronological order, is' Act No. 135 of 1922 which amends Section '2 of the basic statute (Act No. 285 of 1908) therein broadening the powers heretofore granted. It' is conceded that this statute (Act No. 135 of 1922) has no application to the issue here presented.
 

 “The next statute relating to the subject matter was Act No. 26 of 1926 which conferred on municipalities the authority of creating sewerage boards, enumerating its powers, and delegating to the municipality creating the same the appointment of the members thereof. This act likewise has no application to the instant case.
 

 “At the following 1928 Session of the Legislature the basic statute of 1908 was amended by Act No. 46. of 1928. This ■statute amended and re-enacted the title and Sections 1, 2, 5 and 7 of Act 285 of 1908 and again enumerated the powers of .sewerage boards. It further provided, by reference, that the election procedure as provided for by Act No. 46 of 1928 would be controlling.
 

 “Section 5 of said amending statute (Act .46 of. 1928) amends Section 5 of the 1908 statute so as to read as follow’s:
 

 “
 
 ‘That all elections within said districts for incurring of indebtedness and the issuance of negotiable bonds as above provided, shall be called and said bonds shall be issued and sold by the governing authority of said municipality as provided by Act No. 46 of the Legislature of Louisiana for the year 1921 and Acts superseding or amending the same, and for the payment of the principal and interest of said bonds the governing authority of said municipality shall levy annually ad valorem taxes on all the taxable property in said sewerage district in the manner provided by Act No. 46 of the Legislature of Louisiana for the year 1921 and Acts superseding or amending the same.’
 

 “Thus amended, it is obvious therefore that all elections within said sewerage districts for the incurring of indebtedness and the issuance of negotiable bonds shall be called, perfected, held and the bonds issued and sold by the governing authority of the municipality, namely; the City Council or Municipal Board.
 

 “Said statute of 1928 also amends Section 7 of the basic statute of 1908. In the basic statute, Section 7 thereof provided that the City Attorney ‘shall be ex officio attorney for the Board of Sewerage Commissioners, and shall serve as such without remuneration.’ Section 7 of Act 46 of 1928 provides that ‘the City Attorney of such municipality shall be ex-officio attorney for said Board of. Sewerage Commissioners’, thus omitting the provisions of
 
 *439
 
 the former section that he ‘shall serve * * * without remuneration.’ By such an amendment the Legislature clearly evidenced the intention that the City Attorney should be compensated for his services, thus removing him from the ineligible list and permitting him to receive special compensation under proper circumstances.
 

 “The Municipal Council of the City of Lake Charles, having called a special election for said bond issue under the applicable statutes, supra, thereupon engaged the services of Fred C. Selby, City Attorney, for the purpose of casting and perfecting all legal matters and proceedings in connection therewith at an end that said bonds would be presented to and be acceptable on the market. On December 19, 1947, pursuant to the contract previously entered into, as afore-stated, the Defendant City Council, in a regular official session, adopted a resolution setting forth the contract between it and Mr. Selby and fixing his fee for legal services performed in the amount of $8,000.-00, less the sum of $1,200.00 to be paid to Chapman and Cutler, nationally known bond attorneys, leaving a net fee, in favor of Mr. Selby, of $6,800.00 and which is the amount presently in dispute. This resolution was forwarded to the Attorney General as required by the provisions of Section 7409, Volume 5, Dart’s Statutes and which was thereafter approved by the Attorney General and certified as required. (See Exhibit “D-l” and “D-2”).
 

 “At the outset it may be stated that this-suit does not present any attack quest'ioning-the legal services rendered by Mr. Selby,, nor that they have not been performed or that they have not been satisfactorily completed. Neither is bad faith, fraud or misrepresentation injected herein.
 

 “It must be conceded that in the absence of statutory restrictions or prohibitions, municipal corporations enjoy a general power to make contracts in furtherance-of corporate objects. The powers of a municipal corporation are not alone confined to-that which is expressly and. specifically-granted. These powers may be divisible,, those expressly granted and those that maybe fairly implied. These implied powers include matters which are incidental to expressed powers, or fairly indispensable to-the execution thereof. Such implied powers-are such as may be naturally inferred as-a result of the imposition of expressed powers and duties, the fulfillment of which could not be otherwise accomplished. Of" necessity, these implied powers must be such, as are germane, reasonable and necessary- and not such as may be foreign to the power or duty delegated to a municipality.
 

 “In the case of State v. Board of Commissioners of the Port of New Orleans, 153’-La. 664 [96 So. 510, 512], the Court said:
 

 “ ‘The investment in the board of “all. rights, powers and immunities incident to corporations” means, not that the board has-all or any of the powers that any corporation.
 
 *441
 
 may have, but that the board has all of the incidental or implied powers that a political corporation needs to perform the duties that are expressly imposed upon it, or to fulfill the objects and purposes for which it was created. In allowing the board to do whatever is necessary for the exercise of the authority and duties expressly conferred upon it, the law does not put a very strict meaning upon what is
 
 necessary,
 
 but leaves the matter in some measure to the discretion of the board.’ (Italics mine)
 

 “In the case of Montgomery et al. v. City of Lafayette, et al., 154 La. 822, 98 So. 259, [260], the Court therein said:
 

 “ ‘A municipal corporation possesses and can exercise the following powers, and no others: first, those granted in express words; those necessarily or fairly implied in or incident to the powers expressly granted; and, third, those essential to the declared object and purpose of the corporation, not simply convenient but indispensable.’ (See extensive list of authorities therein cited).
 

 “Also see: Guillotte v. City of New Orleans, 12 La.Ann. 432; Parish of Ouachita v. City of Monroe, 42 La.Ann. 782 [7 So. 717] ; American Ice Co. v. Police Jury, 162 La. 614, 110 So. 878.
 

 “In a general and broad sense it may be equally stated, as conceded by both sides, that ‘responsibility and power are concomitant.’ It is equally obvious that powers expressly conferred upon a municipality to be exercised for the public benefit or protection imposes a duty and obligation. This duty and obligation is not permissive, but imperative, and in the performance thereof it is necessarily called upon to exercise such implied powers as are fairly incidental thereto so that the duty thus imposed may be fully effectuated.
 

 “The authority and responsibility for calling the bond election in question and the issuing and sale of the negotiable bonds being expressly vested in the City Council of Lake Charles as the governing authority of said municipality, it must be conceded that there are certain resulting prerequisites which must be observed so as to attain the desired end. These prerequisites must necessarily be performed or fulfilled in conformity with legal requirements. Such prerequisites involve the submission of the proposition to the electorate in valid form, the conducting and holding the election and incidents thereof, the printing of the bonds in proper legal form and their ultimate acceptance on the market. It would seem that there could be no fair dispute over the paying of expenses in connection therewith, including reasonable attorney’s fees. No municipality could reasonably expect to have a purchaser of its obligations until the bonds were cast into such form and published in such manner as the market would demand. It could not fairly be said to have acceptable bonds for sale until they were formulated in strict compliance with statutory requirements, for of necessity public
 
 *443
 
 securities cannot be considered marketable unless they are legal and valid in all respects. Certainly, in order to achieve this desirable result, the services of a reputable attorney must necessarily be engaged. It cannot be denied that the services of an attorney to do the numerous and sundry legal acts, and the preparation of all technical documents in connection therewith is an all-important ground work.
 

 “The defendant Selby, as attorney, having performed all legal services required of him and the bonds having been readily approved and sold necessarily forces the conclusion that his services in that connection were manifestly successful and that he has discharged his responsibilities under his contract of employment with the Defendant City.
 

 “There is no statutory nor judicial authority, and I have been referred to none, which prohibits the payment of attorney’s fees as is here sought to be enjoined. This is equally true as to the payment of all other expenses incurred by the City Council of Lake Charles under the authority delegated to it in the calling' and holding of said election. A fair construction of the quoted statutes supra, wherein the Defendant City Council, as the governing authority, is expressly authorized and •empowered, to call, and hold the election, print, issue and sell the bonds so authorized by the electorate, as was successfully done in this instance, forces the conclusion that said Defendant City legally possessed such implied powers as were necessarily and incidental thereto. Accordingly, the Defendant City Council was fully warranted to contract for the legal services rendered in connection therewith and to now pay out of the proceeds realized from the bond sale, the attorney’s fees agreed upon.”
 

 For the reasons assigned, the judgment is affirmed at appellant’s cost.
 

 O’NIELL, C. J., takes no part.