HAMITER, Justice.
The defendant, Joseph Theall, is appealing from his conviction and sentence under a charge that he, “as proprietor at Municipal No. 918 Ryan Street, Lake Charles, Louisiana did, on or about the 23rd day of January, 1954, * * * unlawfully permit the existence therein of gambling paraphernalia, to-wit: cards, chips, horse racing betting sheets, and horse racing betting tickets to be used in unlawful gambling in violation of Section 4 of Ordinance No. 945 of the City of Lake Charles.”
In seeking a reversal the defendant relies on a bill of exceptions taken to the trial court’s overuling of a motion to quash, he having assigned therein numerous reasons for the unconstitutionality and illegality of such ordinance and of the statute pursuant to which the ordinance was adopted, namely Act No. 327 of 1952.
Previous to the year 1920 certain municipalities of Louisiana possessed the right to enact ordinances to prohibit and penalize gambling, but they were not authorized to formulate a definition therefor. See Act *464 No. 136 of 1898, known as the Lawrason Act, LSA-R.'S. 33:401. In 1920 the Legislature adopted Act No-. 125 which empowered municipalities with a population of more than 5,000 and less than 100,000 inhabitants “to define what shall constitute gambling”, as well as to prohibit it.
Subsequently, by Article 90 of the Criminal Code, Act No. 43 of 1942, the Legislature specifically defined the word “gambling” ; and later it placed the definition in the LSA-Revised Statutes of 1950, it now being referred to and known as LSA-R.S. 14:90.
Likewise incorporated in and made a part of the LSA-Revised Statutes of 1950 was that portion of the mentioned Act No. 125 of 1920 which empowered municipalities coming within its purview to pass ordinances prohibiting gambling and providing penalties for the violations, LSA-R.S. 33 :- 4851. But the part of such act which authorized the municipalities “to define what shall constitute gambling” was not also carried into our Revised Statutes.
Alluding to this omission, we observed in City of Alexandria v. LaCombe, 1952, 220 La. 618, 57 So.2d 206, 209, as follows: “Thus it is seen that the power to define gambling in ordinances passed under the authority of that Act was withheld and we are left, therefore, with the only definition of the word ‘gambling’ as it is found in LSA-R.'S. 14:90 and which contains the requirement that the conducting of gambling must' be as a business, in order for it to become a misdemeanor or a crime. It is clear, therefore, that the only manner in which a municipality has the power to define gambling is as thus restricted for, as we have shown, it only derives authority to enact ordinances relating to gambling from the Legislature itself. * * * ”
Perhaps influenced somewhat by that decision the Legislature of 1952 enacted the statute, No. 327, which is assailed in this cause, it reading: “Authorizing and empowering all incorporated municipalities in the State of Louisiana having a population of 100,000 inhabitants or less to pass laws prohibiting within said municipalities gambling or games of chance for money or for value and to empower said municipalities to define gambling within said municipalities and to provide penalties.
“Section 1. Be it enacted by the Legislature of Louisiana that all municipalities in the State of Louisiana having a population of 100,000 inhabitants or less are hereby authorized and empowered to pass laws prohibiting within said municipalities gambling or games of chance for money or for value in any form whatsoever and to define what shall constitute gambling and to provide penalties for the violation of any laws passed under the power hereby delegated.
“Section 2. That all laws or parts of laws in conflict herewith are hereby repealed.”
Pursuant to those provisions the City of Lake Charles adopted the ordinance under *466 which this defendant was charged and convicted, it reciting (insofar as pertinent) as follows:
“Section 1. Be It Ordained By The Council of The City of Lake Charles, Louisiana, in legal session convened that gambling as hereinafter defined is declared to be a misdemeanor and is prohibited within the corporate limits of the City of Lake Charles.
“Section 2. Be It Further Ordained, Etc., that gambling is defined to consist of any one of the following acts:
(a) The intentional conducting or directly assisting in the conducting as a business of any game, contest, lottery, or contrivance whereby a person risks the loss of anything of value in order to realize a profit.
(b) The intentional betting, wagering or risking the loss of anything of value in order to realize a profit at any table, bank, alley, lottery or contrivance.
(c) The intentional betting, wagering or risking the loss of anything of value in order to realize a profit at any game conducted with cards, dice, dominoes or other contrivance..
“Section 3. Be It Further Ordained,Etc., that the provisions of this ordinance shall not apply to gambling as hereinabove defined in Section 2, Subsections (b) and (c), conducted within a bona fide private residence actually used and occupied as a home; provided further that any hotel, rooming house or place of transient residence shall not be deemed or construed as a bona fide private residence.
“Section 4. Be It Further Ordained, Etc., that any owner, proprietor, lessee or tenant of any building or premises within the corporate limits of the City of Lake Charles who shall permit the existence thereon of any gambling tables, gambling wheel, slot machine or of any apparatus or paraphernalia used or kept and provided to be used in unlawful gambling as hereinabove defined, shall be guilty of a misdemean- or; provided further that the presence of any such article, device, apparatus paraphernalia on said premises shall be prima facie evidence of the knowledge of the existence thereof on the part of the owner, proprietor, lessee or tenant of said premises.”
On this appeal appellant first contends that “Act No. 327 of 1952 is unconstitutional and violates Article 2, Section 1, and Article 3, Section 1, Louisiana Constitution of 1921, in that the Legislature cannot give to the cities the power to create and-define offenses since such power cannot be validly delegated.” ■ A complete answer to this contention, ■ which clearly is without merit, is to be found in the comparatively recent case of City of New Orleans v. Stone, 1952, 221 La. 133, 58 So.2d 736, 738. Therein, we specifically recognized the right of the Legislature to give to a municipality *468 authority to' adopt an ordinance such as the one under consideration — even to grant (as in the case of the City of New Orleans) “ * * * sweeping police power, entitling it to legislate on all matters affecting the community irrespective of whether the Legislature has legislated thereon and subject only to the single proviso that the ordinances of the city shall not directly conflict with the provisions of any state laws on the same matter. * * * ”
Next, appellant takes the position that “If the Legislature could validly delegate the power to define gambling by Act No. 327 of 1952 then Lake Charles exceeded its authority in passing Ordinance 945 and that said ordinance is an ultra vires act and is therefore null and void.” In this connection, his counsel argue that the right to define and prohibit gambling, granted by such statute, does not carry with it the authority to denounce possession of gambling paraphernalia and make it a misdemeanor, as is sought to be done in the ordinance’s Section 4 for the violation of which defendant was charged and convicted. And in support of the argument they rely on the general rule that in the enactment, of regulations municipal corporations may not exceed the authority granted to them, counsel citing 62 C.J.S.,- Municipal Corporations, § 142, pages 284 to 286.
However, that- same authority, 62 C.J.S., Municipal Corporations,. in its § 117, contains these pronouncements: “While it is true, as discussed supra § 115, that a municipal corporation has only such power as has been granted to it by the state, that does not mean that the power to do each particular act must be specifically granted. The powers of a municipal corporation are divisible into those that are express and those that are implied; and under this classification the rule is sometimes stated that such powers are limited to those which are either express or implied. * * *
******
“Implied powers comprehend all other than inherent and express powers, and are those powers which arise by natural implication from the grant of express power, or by inevitable inference from the purpose or functions of the corporation. Although there are some broad general statements, in cases where courts have had under consideration particular powers, to the effect that municipal corporations have no implied powers, but only such powers as have expressly been granted to them or which are necessary to make effective the powers expressly granted, it seems to be well established by repeated adjudications that municipal corporations may exercise all powers within the fair intent and purpose of their creation which are reasonably proper tv give effect to the powers expressly granted, and that in so doing they have the choice of the means adapted to the ends and are not confined to any one mode of_ operation; * * *(Italics ours.)
Continuing, in 62 C.J.S., Municipal Corporations, § 143, the following is stated: *470 “As a general rule, a municipal regulation which is merely additional to that of the state law does not create a conflict therewith. Where the legislature has assumed to regulate a given course of conduct by prohibitory enactments, a municipal corporation may make such additional reasonable regulations in 'aid and furtherance of the purpose of the general law as may seem appropriate to the necessities of the particular locality. The fact that an ordinance enlarges on the provisions of a statute by requiring more than the statute requires creates no conflict therewith unless the statute limits the requirements for all cases to its own prescriptions. * * * ” (Italics ours.)
Our jurisprudence on the subject, to quote from Town of Pineville v. Vandersypen, 212 La. 521, 33 So.2d 56, 57, is to this effect,: “Municipal corporations, being creatures of the, legislature, possess only such powers as are granted to them by the legislature in express words, or those that are necessarily or fairly implied in or are incident to the powers so expressly conferred. * * * ” (Italics ours.) See also Montgomery v. City of Lafayette, 154 La. 822, 98 So. 259 and First Sewerage District of City of Lake Charles v. City Council of Lake Charles, 215 La. 428, 40 So.2d 808.
And having some bearing on the instant consideration are those cases which announce the doctrine that the constitutional provision limiting a statute to one object, with it indicated in the title, does not'.require that every means appropriatefor accomplishing such object be provided for by a separate act or set out in the title. State v. Lahiff, 144 La. 362, 80 So. 590, Ricks v. Department of State Civil Service, 200 La. 341, 8 So.2d 49.
Obviously, the statute in question, No. 327 of 1952, was enacted in furtherance of the constitutional mandate that the Legislature shall pass laws to suppress gambling, Article 19, Section 8, Louisiana Constitution of 1921. In keeping therewith, and although it had previously adopted a gambling statute, LSA-R.S. 14:90, the Legislature saw fit to enact the 1952 legislation in which it delegated to certain muriicijpalities the unlimited authority to pass laws (1) “prohibiting within said municipalities gambling or games of chance for’money or for value in any form whatsoever” and (2) “to define what shall constitute gambling” and (3) “to provide penalties for the violation of-any laws passed under the power hereby delegated” — all granted, undoubtedly, with the general intent and purpose of suppressing gambling. And arising and flowing by implication from the unrestricted and unqualified authorization to prohibit thus expressly delegated, in accordance with the above stated legal principles, is the right of the municipalities to decide upon and adopt whatever means that maybe reasonably appropriate, incidental and necessary to accomplish the mentioned general purpose. .
*472 Availing itself of that implied power the City of Lake Charles, in its Ordinance No. 945, declared that the possessor of gambling paraphernalia "used or kept and provided to be used in unlawful gambling as hereinabove defined (Section 2 of the ordinance), shall be guilty of a misdemean- or.” This declaration provided merely a means or a method reasonably appropriate, incidental and necessary for effectuating the authorized prohibition of gambling. Therefore, Section 4 of the ordinance, for the violation of which the defendant was convicted, is not ultra vires of Act No. 327 of 1952.
Again, appellant urges that “Ordinance 945 is defective and - is null and void because it is so vague, indefinite, uncertain and violates due process of law.” And his counsel argue: “Under Ordinance 945 a defendant can be charged if he owns a deck of cards and the arresting officer thinks he might use that deck of cards in unlawful gambling sometime in the future. This is entirely subjective. How can the city determine what a deck of cards will be used for? This furnishes us with no adequate criterion or ascertainable standard of guilt in any respect. * * * ” The argument, which is unsupported by authority, is untenable. It completely overlooks the requisite of the ordinance’s Section 4 (pointed out above) that for possession of gambling paraphernalia to constitute a misdemeanor such material must be “used or kept and provided to be used in unlawful gambling” as defined in Section 2. Thus, the offense does not result from mere possession of the deck of cards. It is committed when, and only when, the possession is coupled with a specific intention to use the paraphernalia in the prohibited act of gambling — a factor or an element the proof of which is necessary, just as it is in many other ordained crimes involving a specific intent.
Appellant, in another attack, erroneously asserts that under the authority of City of Alexandria v. LaCombe, supra, Ordinance No. 945 (similar to the Alexandria ordinance) conflicts with LSA-R.S. 14:90 and is therefore null and void. The conflict noted in the cited case was due to the fact that the power to define granted to municipalities by Act No. 125 of 1920 was deleted from the Revised Statutes of 1950. As shown above, however, the omission was corrected by Act No. 327 of 1952, under the authority of which Ordinance No. 945 was enacted.
It is further urged by appellant that Ordinance No. 945 violates LSA-R.S. 33 :406 in that it contains more than one subject. It is doubtful that the cited statutory provisions are applicable, for, as recited therein, they “shall not apply to a municipality which is governed by a special legislative charter,” and we are inclined to the belief that the City of Lake Charles is so governed. But if applicable the ordinance in question, in our opinion, contains only one subject, it being (as indicated in the title) *474 the prohibiting of gambling within the corporate limits of Lake Charles.
The final complaint of appellant is that Act No. 327 of 1952 is broader than its title, and consequently null and void, in that the title refers to “all incorporated municipalities” whereas the body relates to “all municipalities”. The complaint is not well founded. Lake Charles is an incorporated municipality, and as such it is included in the provisions of both the title and body of the act. This being true, that part of the body of the statute which might relate to unincorporated municipalities is to be treated as mere surplusage. See State ex rel. Porterie, Atty. Gen. v. Housing Authority of New Orleans, 190 La. 710, 182 So. 725 and Peck v. City of New Orleans, 199 La. 76, 5 So.2d 508.
For the reasons assigned the conviction and sentence are affirmed.
FOURNET, C. J., absent.
MOISE, J., concurs with a written reason.