763 So.2d 671 (1999)
STATE of Louisiana
v.
Blaine PENNISON.
No. 99 KA 0466.
Court of Appeal of Louisiana, First Circuit.
December 28, 1999.
*673 Jay J. Luke, Asst. District Attorney, Houma, Counsel for State of Louisiana.
Gwendolyn K. Brown, Baton Rouge, Counsel for Blaine Pennison.
Before: CARTER, C.J., LeBLANC and PETTIGREW, JJ.
LeBLANC, J.
The defendant, Blaine Paul Pennison, was charged by bill of information with one count of distribution of cocaine in a drug-free zone (count I), and one count of possession with intent to distribute cocaine in a drug-free zone (count II), violations of La. R.S. 40:981.3. He moved to quash the bill of information and to suppress certain evidence. The motions were denied, and he pled guilty pursuant to State v. Crosby, 338 So.2d 584 (La.1976). On count I, he was sentenced to fifteen years at hard labor without benefit of probation, parole, or suspension of sentence, and was fined $50,000. On count II, he was sentenced to fifteen years at hard labor without benefit of probation, parole, or suspension of sentence, to run concurrently with the sentence imposed on count I, and was fined $50,000. He now appeals, designating two assignments of error.

FACTS
No factual basis for the defendant's pleas was set forth at his Boykin hearing. However, the facts surrounding the defendant's arrest appear in the record in a Terrebonne Parish Sheriff's Office Narcotics Division report concerning the defendant's arrest.
On January 21, 1998, Terrebonne Parish Sheriff's Office Narcotics Agents (agents) were advised that a person with a California driver's license had checked into room 148 at the Plantation Inn Motel in Houma, Louisiana.[1] A telephone call was immediately made from the room to Donnie Hebert, a known local drug dealer arrested within the previous two years on drug charges and reportedly actively dealing *674 drugs.[2] Agents took up position in room 122 at the motel, directly across from room 148, and began surveillance of room 148. Using a video camera, agents documented several persons coming to room 148, staying a short while, and then leaving. Agents observed the defendant and three other white males in room 148. Agents also observed a white female enter room 148 and leave the door open. The white female handed the defendant some U.S. currency and the defendant counted the money and placed it into his left front pants' pocket. Thereafter, the white female, the defendant, and one of the other white males left the room.
Agents prepared two confidential informants (CIs), including CI # 4182, to go to room 148 to attempt a drug purchase. The CIs and their vehicles were searched for weapons, money, or contraband and none were found. Then, CI # 4182 was given $40 in marked money, fitted with an audio transmitting device, and placed under visual and audio surveillance.
At approximately 5:56 p.m., the CIs arrived at the rear parking lot of the motel. Agents observed the defendant approach the CIs' vehicle and make contact with CI # 4182. Thereafter, the defendant went inside room 148 for approximately 20 seconds before returning to CI # 4182 and conducting a transaction. After the drug transaction, CI # 4182 went directly to room 122 and turned over to agents a clear plastic bag containing .5 grams of a substance later identified as cocaine. CI # 4182 related that when the defendant approached him in the parking lot, the defendant asked him if he knew where to find some crack, and he answered he did not know. CI # 4182 then asked the defendant if he knew where he (CI # 4182) could get $40 worth of "powder[,]" and the defendant told him to wait while the defendant went to "tell the guy in the room." Thereafter, the defendant exchanged the cocaine for the marked money.
The drug transaction took place approximately 300 feet from Vandebilt Catholic School, where, within view of the transaction, a soccer game was in progress.
Subsequently, agents obtained a search warrant for room 148, and the defendant, six packets of cocaine (approximately 3 grams in total weight), drug paraphernalia, and two loaded handguns were recovered from the room. Additionally, the $40 marked currency and $613 additional currency were recovered from the pocket of the defendant's pants.

MOTION TO QUASH
In assignment of error number 1, the defendant contends the trial court erred in denying his motion to quash. He argues that the La. R.S. 40:981.3 exception for "private residences" should be applied to the portions of the bill of information charging violation of La. R.S. 40:981.3 which occurred entirely within "his" motel room where no person under the age of seventeen was present.
La. R.S. 40:981.3, in pertinent part, provides:
A. (1) Any person who violates a felony provision of R.S. 40:966 through R.S. 40:970 of the Uniform Controlled Dangerous Substances Law while on any property used for school purposes by any school, within one thousand feet of any such property ... shall, upon conviction, be punished in accordance with Subsection E.
. . . . .
B. Lack of knowledge that the prohibited act occurred on or within one thousand feet of school ... property shall not be a defense.
C. For purposes of this Section:

*675 (1) "School" means any public or private elementary, secondary, vocational-technical school....
(2) "School property" means all property used for school purposes, including but not limited to school playgrounds....
. . . . .
D. A violation of this Section within one thousand feet of school property ... shall not include an act which occurs entirely within a private residence wherein no person seventeen years of age or under was present.
Initially, we note that the defendant committed count I outside of motel room 148, and thus, his argument applies only to count II.
It is well established that criminal statutes are to be strictly construed. Courts are not empowered to extend by analogy the terms of a criminal provision to cover conduct not included within the definition of a crime. Any doubt as to the extent of the coverage of a criminal statute must be decided in favor of the accused and against the State. See State v. Smith, 97-0782, p. 4 (La.App. 1 Cir. 2/20/98), 708 So.2d 1166, 1168. However, in interpreting criminal statutes, Revised Statute 14:3 requires that the provisions thereof "be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision ." State v. Crawford, 98-0585, p. 3 (La.App. 1 Cir. 12/28/98), 727 So.2d 589, 590.
The term "private residence" is not defined in either La. R.S. 40:981.3, or in La. R.S. 40:961. However, jurisprudence provides some guidance on this issue In State v. Range, 93-1693, p. 8 (La. App. 1 Cir. 8/5/94), 642 So.2d 1318, 1322, a "private residence" was distinguished from a "public place." Similarly, in State v. Burge, 449 So.2d 196, 199 (La.App. 3 Cir.), writ denied, 452 So.2d 172 (1984), a "private residence" was distinguished from a "commercial establishment." Further, an illustrative listing in Village of Moreauville v. Boyer, 138 La. 1070, 1072, 71 So. 187, 188 (1916), inferentially distinguishes "private residences" from the other listed establishments: "a church, a bank, a convent, a public school, a railroad station, three stores, [and] a dago shop." In State v. Shillow, 602 So.2d 28, 30-31 (La.App. 3 Cir.1992), the court was considering the provisions of La. R.S. 40:981.2 when it found that neither a bar, a pharmacy nor the parking lot thereof qualified as a private residence. We also note references in the cases of City of Lake Charles v. Theall, 227 La. 461, 465-66, 79 So.2d 739, 741 (1954), and State, Through Department of Highways v. Perkins, 137 So.2d 102, 106 (La.App. 1 Cir.1962), indicative of a commonly held understanding that rooming houses or hotels are not considered private residences.
The facts of the instant case show that motel room 148 was used by the Californian and by the defendant for drug dealing rather than as a "home." Moreover, even if motel room 148 could qualify as a "residence," it certainly could not qualify as the "private residence" required by La. R.S. 40:981.3(D). The word "private" is defined as "[o]f or limited to one person" or "[n]ot available for public use, control, or participation."[3] Motel room 148 was available to any member of the public willing to pay its rental.
Moreover, the policy behind La. R.S. 40:981.3 would be thwarted by an expansive construction of "private residence" as the term appears in La. R.S. 40:981.3(D). The purpose of the statute is to enhance penalties for drug-related felony offenses that occur near schools in order to protect children from drug use and the harmful effects and influences attendant therewith. Crawford, 98-0585 at p. 4, 727 So.2d at 591. Accordingly, this assignment of error is without merit.

*676 MOTION TO SUPPRESS

In assignment of error number 2, the defendant contends the trial court erred in denying his motion to suppress. He argues the police tactics employed against the Californian offended the Californian's and his constitutional privacy rights and rights against unreasonable searches and seizures, and thus, all the evidence seized in the instant case was "fruit of the poisonous tree" and should have been suppressed.[4]
Initially, we note that the defendant cannot assert violation of the Californian's Fourth Amendment rights. Rights under the Fourth Amendment are personal in nature. As such, they may be enforced by exclusion of evidence only at the instance of a person whose own protection was infringed by the search or seizure. State v. Byrd, 568 So.2d 554, 562 (La.1990).
It is axiomatic that the defendant may assert violation of his own Fourth Amendment rights.
In State v. Fisher, 97-1133, pp. 4-5 (La.9/9/98), 720 So.2d 1179, 1182-83, the Louisiana Supreme Court recognized a three-tiered analysis governing the Fourth, Amendment's application to interactions between citizens and police. At the first tier, mere communications between officers and citizens implicate no Fourth Amendment concerns where there is no coercion or detention. United States v. Watson, 953 F.2d 895, 897 n. 1 (5th Cir. 1992), cert. denied, 504 U.S. 928, 112 S.Ct. 1989, 118 L.Ed.2d 586 (1992); State v. Britton, 93-1990 (La.1/27/94); 633 So.2d 1208, 1209 (noting that police have the same right as any citizen to approach an individual in public and to engage him in conversation under circumstances that do not signal official detention).
At the second tier, the investigatory stop recognized by the United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the police officer may briefly seize a person if the officer has an objectively reasonable suspicion, supported by specific and articulable facts, that the person is, or is about to be, engaged in criminal conduct or is wanted for past criminal acts. Watson, 953 F.2d at 897 n. 1; United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (citing Terry, 392 U.S. at 30, 88 S.Ct. at 1884-85); State v. Moreno, 619 So.2d 62, 65 (La.1993). La.Code Crim. P. art. 215.1(A) provides that an officer's reasonable suspicion of crime allows a limited investigation of a person. However, reasonable suspicion is "insufficient to justify custodial interrogation even though the interrogation is investigative." Florida v. Royer, 460 U.S. 491, 499, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983).
Lastly, at the third tier, a custodial "arrest," the officer must have "probable cause" to believe that the person has committed a crime. Watson, 953 F.2d at 897 n. 1; Moreno, 619 So.2d at 65. La.Code Crim. P. art. 213, uses the phrase "reasonable cause."[5] The "probable cause" or "reasonable cause" needed to make a full custodial arrest requires more than the "reasonable suspicion" needed for a brief investigatory stop. See Terry, 392 U.S. at 18-22, 88 S.Ct. at 1879-80; State v. Flowers, 441 So.2d 707, 712 (La.1983), cert. denied, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984) (noting that a less intrusive stop does not require the same "probable cause" needed for an arrest).
*677 In the instant case, agents "interacted" with the defendant by observing him inside room 148, outside room 148, and by seizing him inside room 148.
Whether or not the observations of the defendant inside of room 148 constituted a "search" is irrelevant for Fourth Amendment purposes because the defendant was using motel room 148 for drug dealing, and thus, had no legitimate expectation of privacy in the room. See Minnesota v. Carter, 525 U.S. 83, 90, 119 S.Ct. 469, 474, 142 L.Ed.2d 373 (1998).
The observations of the defendant outside room 148 failed to even rise to Fisher's first level of scrutiny. Agents simply saw what any member of the public would have seen from their position.
Lastly, the seizure of the defendant and the challenged evidence inside room 148 also clearly survive Fisher analysis. The seizure was made in connection with the execution of a lawful search warrant, supported by probable cause to arrest the defendant for count I. Thus, no violation of the defendant's Fourth Amendment rights occurred.
Although the defendant is prohibited from asserting violation of the Californian's Fourth Amendment rights, he is not prohibited, given his claims herein, from asserting violation of the Californian's privacy rights under the Louisiana Constitution. Under La. Const. Art. I, § 5, "Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court."
However, La. Const. Art. I, § 5 prohibits only unreasonable invasions of privacy. In ascertaining whether individuals have a reasonable expectation of privacy that is constitutionally protected, a court must determine not only whether the individual has an actual or subjective expectation of privacy, but whether that expectation is also of a type which society at large is prepared to recognize as being reasonable. Local 100, Service Employees' International Union v. Forrest, 95-1954, p. 4 (La.App. 1 Cir. 5/10/96), 675 So.2d 1153, 1156, writ denied, 96-1499 (La.9/20/96), 679 So.2d 441.
Any expectation of privacy that the Californian had in his California driver's license was not of a type which society at large is prepared to recognize as being reasonable. Driver's licenses are common government issued forms of picture identification. They are routinely presented to anyone interested to establish one's identity on a day-to-day basis. Similarly, any expectation of privacy that the Californian had in the telephone numbers dialed from motel room 148 was also not of a type which society at large is prepared to recognize as being reasonable. Smith v. Maryland, 442 U.S. 735, 743-44, 99 S.Ct. 2577, 2582, 61 L.Ed.2d 220 (1979). Thus, no violation of the Californian's privacy rights under the Louisiana Constitution occurred.
Furthermore, for the reasons set forth hereinabove, the defendant suffered no unreasonable invasions of his privacy, and thus, his privacy rights under the Louisiana Constitution also were not violated.
In regard to the telephone numbers dialed from room 148, the defendant also argues agents violated the Electronic Surveillance Act, La. R.S. 15:1301 et seq., by obtaining the pen register of telephone calls dialed from the room. However, the term "pen register" is specifically defined under the Electronic Surveillance Act not to include "any device used by a provider or customer of a wire or electronic communication service for billing, or recording as an incident to billing, for communications services provided by such provider or any device used by a provider or customer of a wire communication service for cost accounting or other like purposes in the ordinary course of its business." La. R.S. 15:1302(15). Thus, this assignment of error is without merit.
*678 CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] As part of an investigation of drug trafficking from California, agents maintained a business contact at the motel who advised them when anyone from California checked into the motel.
[2] The motel's management had a system in place whereby it received a printout showing the telephone number dialed, the length of the call, and the cost of the call for telephone calls dialed from the motel's rooms.
[3] Webster's II New College Dictionary 880 (1995).
[4] Defense counsel confuses her argument in the instant assignment of error by incorrectly reading the record to state the defendant was targeted by the drug task force because he, rather than the Californian, was believed to be/was from California.
[5] The "reasonable cause" standard of Article 213 is equivalent to "probable cause" under the general federal constitutional standard. Fisher, 97-1133, at p. 5 n. 4; 720 So.2d at 1183, n. 4; State v. Weinberg, 364 So.2d 964, 969 (La.1978). To read Article 213 as allowing an arrest on less than probable cause would put the article afoul of the Fourth Amendment. Fisher, 97-1133, at p. 5 n. 4; 720 So.2d at 1183, n. 4.