938 So.2d 147 (2006)
STATE of Louisiana
v.
Daniel A. CAPLES.
No. 2005 KA 2517.
Court of Appeal of Louisiana, First Circuit.
June 9, 2006.
*150 Walter P. Reed, District Attorney, Covington, Dorothy A. Pendergast, Metairie, Counsel for Appellee State of Louisiana.
Katherine M. Franks, Slidell, Counsel for Defendant/Appellant Daniel A. Caples.
Before: KUHN, GUIDRY, and PETTIGREW, JJ.
KUHN, J.
The defendant, Daniel A. Caples, was charged by bill of information with one count of first degree robbery, a violation of La. R.S. 14:64.1, and pled not guilty. He moved to suppress his identification by the victim, his statement, and the evidence, but after a hearing, these motions were denied. Following a jury trial, he was found guilty as charged. He moved for a new trial and for a post verdict judgment of acquittal, but the motions were denied. He was sentenced to seven years at hard labor without benefit of probation, parole, or suspension of execution of sentence. He moved for reconsideration of sentence, but the motion was denied. He now appeals, designating five assignments of error. We affirm the conviction and sentence.

FACTS
The victim, Todd Reynolds, testified at trial and gave the following account of the offense. On December 9, 2004, he had a 7:00 a.m. meeting with United States Representative Tim Burns at the Holiday Inn at I-12 in Slidell, Louisiana. The victim arrived for the meeting at approximately 6:50 a.m. and waited in his car, reading some papers. Approximately five minutes later, he exited his vehicle, leaving his wallet in the vehicle, but taking two twenty-dollar bills from the wallet with which to pay for breakfast. As he stepped out of his vehicle, the defendant confronted him. The defendant said, "Give me your money." The victim replied, "What," and the defendant stated, "Give me your money. I have a knife." The defendant's right hand was underneath his sweater. The victim surrendered his two twenty-dollar bills to the defendant because he felt threatened by him. The victim then ran around to the back of his vehicle. The defendant began briskly walking in the direction of a Race Trac gas station and Burger King restaurant. The victim got into his vehicle, dialed 911 on his telephone, and tried to follow the defendant, but lost sight of him after getting stuck in traffic. The defendant was subsequently stopped by police, returned to the crime scene, identified by the victim, and arrested.
The victim indicated he did not fight back because he was afraid the defendant had a knife, thought the defendant might have HIV, and did not want to take the chance of exchanging bodily fluids with the defendant during a fight. The victim believed the defendant had a knife because of the threat he had made and due to a hand motion he had made underneath his sweater.
The defendant also testified at trial. He conceded he had criminal convictions for burglary and theft. He claimed on the day of the offense he was "Getting money for Christmas." He claimed he was approaching people and telling them he needed twenty-two dollars to repair his car at Auto Zone and, if they could help him and his family, he would gladly repay them. He claimed he approached the victim's vehicle and the victim rolled his window down. The defendant claimed he told the victim the story about needing twenty-two dollars, and the victim gave him two twenty-dollar bills. The defendant claimed he thanked the victim and asked if there was anyway he could repay the money, but the victim stated, "No, that's okay. You know, *151 get your car fixed and get home for Christmas and have a Merry Christmas." The defendant claimed he thanked the victim again and walked away. He claimed he then told his story to a man stopped at a red light, and that man gave him ten dollars.
The defendant conceded he lied to the police in his initial statement but claimed he did so because he did not feel he had done anything wrong and was afraid he would be arrested in connection with a misdemeanor theft he had committed at an area Wal-Mart in 1992. He denied robbing the victim, denied ever having a knife, and denied ever saying he had a knife. He conceded, however, he had disposable razors in his pocket when he was arrested, but claimed the razors were left over from a package of razors he had purchased for his wife three days earlier.

SUFFICIENCY OF THE EVIDENCE
In assignment of error number 5, the defendant contends there was insufficient credible evidence introduced to support the verdict of first degree robbery. He argues that the victim gave him forty dollars and then changed his mind after following him and realizing that he had been swindled.
In reviewing claims challenging the sufficiency of the evidence, this Court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also La.Code Crim. P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308-09 (La. 1988).
First degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon. La. R.S. 14:64.1(A).
The first degree robbery statute has objective and subjective components. The State must prove that the offender induced a subjective belief in the victim that he was armed with a dangerous weapon and that the victim's belief was objectively reasonable under the circumstances. The statute thus excludes unreasonable panic reactions by the victim, but otherwise allows the victim's subjective beliefs to determine whether the offender has committed first degree robbery or the lesser offense of simple robbery in violation of La. R.S. 14:65. Direct testimony by the victim that he believed the defendant was armed, or circumstantial inferences arising from the victim's immediate surrender of his personal possessions in response to the defendant's threats, may support a conviction for first degree robbery. State v. Gaines, 633 So.2d 293, 300 (La.App. 1st Cir.1993), writ denied, 93-3164 (La.3/11/94), 634 So.2d 839 (citing State v. Fortune, 608 So.2d 148, 149 (La. 1992) (per curiam) ).
After a thorough review of the record, we are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt that the defendant was guilty of first degree robbery of the victim. The evidence thus viewed, established that the defendant induced a subjective belief in the victim that the defendant was armed with a dangerous weapon and that the victim's belief was objectively reasonable under the circumstances. This court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination *152 of guilt. The testimony of the victim alone is sufficient to prove the elements of the offense. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Lofton, 96-1429, p. 5 (La. App. 1st Cir.3/27/97), 691 So.2d 1365, 1368, writ denied, 97-1124 (La.10/17/97), 701 So.2d 1331.
This assignment of error is without merit.

MOTIONS TO SUPPRESS
In assignment of error number 1, the defendant contends the trial court erred in not suppressing the identification of the defendant, the statement he gave, and "the evidence seized from him where the legality of the initial detention was not established and the identification at the scene, the statement, and the evidence were not attenuated from the initial illegal detention."
On the second day of trial, the defense moved to suppress the identification of the defendant as improper and unconstitutional, moved to suppress the defendant's statement as obtained as a result of an unlawful arrest, not freely and voluntarily given, and obtained without the proper advice concerning the rights of the accused, and moved to suppress the evidence as obtained without the authority of a valid search warrant. Following a hearing, the motions were denied.

IDENTIFICATION
A defendant who seeks to suppress an identification must prove two things. Firstly, he must prove that the identification itself was suggestive. Secondly, he must show that there was a likelihood of misidentification as a result of the identification procedure. State v. Fugler, 97-1936, p. 11 (La.App. 1st Cir.9/25/98), 721 So.2d 1, 11, rehearing granted and amended in part on other grounds, 97-1936 (La.App. 1st Cir.5/14/99), 737 So.2d 894, writ denied, 99-1686 (La.11/19/99), 749 So.2d 668. The factors to be considered in assessing reliability are: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of his prior description of the criminal, (4) the witness's level of certainty, and (5) the time between the crime and the confrontation. Fugler, 97-1936 at p. 11, 721 So.2d at 11-12 (citing Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)).
The victim testified at the hearing on the motions to suppress and at trial.[1] He stepped out of his vehicle and was confronted by the defendant. According to the victim, the defendant said, "Give me your money." The victim replied, "What," and the defendant stated, "Give me your money. I have a knife." The defendant's right hand was underneath his shirt. The victim gave the defendant two twenty-dollar bills. It was daytime, and the defendant was only three or four feet away during the robbery. The victim had a clear view of the defendant's face and clothing. The robbery lasted between one and two minutes, and the victim also viewed the defendant from his car while *153 attempting to follow the victim after the robbery.
Within minutes of the victim reporting the robbery, and within twenty minutes of the robbery, the police brought the defendant to the scene and asked the victim if the defendant was the perpetrator. The defendant was not in a police car when he was presented to the victim, and the police did not suggest to the victim that the defendant was the perpetrator. The victim recognized the defendant as the perpetrator on the basis of his distinctive hat (camouflage LSU baseball cap) his mustache, blondish hair and blue eyes. The victim was absolutely sure of his identification at the scene and also identified the defendant in court as the perpetrator.
A thorough review of the record reveals the procedure surrounding the identification made herein was neither suggestive nor likely to lead to misidentification. Moreover, the victim's identification of the defendant as the perpetrator was reliable. The victim had an excellent opportunity to view the perpetrator at the time of the incident. The robbery was at close range during daylight. The victim also had a high degree of attention and was able to provide details concerning the perpetrator's physical appearance and clothing. Additionally, the victim was absolutely sure of his identification and less than twenty minutes passed between the robbery and the victim's identification of the defendant as the perpetrator.

STATEMENTS
It is well settled that for a confession or inculpatory statement to be admissible into evidence, the State must affirmatively show that it was freely and voluntarily given without influence of fear, duress, intimidation, menaces, threats, inducements, or promises. La. R.S. 15:451. Additionally, the State must show that an accused who makes a statement or confession during custodial interrogation was first advised of his Miranda rights.[2]State v. Plain, 99-1112, p. 5 (La.App. 1st Cir.2/18/00), 752 So.2d 337, 342.
The admissibility of a confession is, in the first instance, a question for the trial court; its conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession are accorded great weight and will not be overturned unless they are not supported by the evidence. Whether a showing of voluntariness has been made is analyzed on a case-by-case basis with regard to the facts and circumstances of each case. The trial court must consider the totality of the circumstances in deciding whether or not a confession is admissible. Plain, 99-1112 at p. 6, 752 So.2d at 342.
Deputy Lance Toups also testified at the hearing on the motions to suppress and at trial. Deputy Toups broadcasted the description of the perpetrator given by the victim. A responding deputy made contact with the defendant, who fit the description, and brought him to the scene for the victim to view. The victim identified the defendant as the perpetrator, and Deputy Toups advised him of his Miranda rights and placed him under arrest. Deputy Toups conducted a protective pat-down search of the outer clothing of the defendant and discovered two disposable razors in the left front pocket of the defendant's pants, seized them as weapons, and placed them in an evidence bag. Deputy Toups then transported the defendant to Detective Hall at the Investigations Bureau.
Detective Hall also testified at the hearing on the motions to suppress and at trial. *154 He also searched the defendant for weapons and then told the defendant to empty out his pockets. Detective Hall seized the defendant's clothing, hat, and wallet as evidence. The wallet contained ninety-five dollars cash, including three twenty-dollar bills. He also advised the defendant of his Miranda rights. Detective Hall did not force or coerce the defendant to make a statement. Nor did he offer the defendant anything of value in return for a statement or compel a statement from the defendant with threats. The defendant freely and voluntarily gave Detective Hall a statement.
The defendant initially denied taking any money from anyone. He then conceded, however, the victim had given him forty dollars after he asked the victim for money.
There was no abuse of discretion in the trial court's denial of the motion to suppress the statements. The evidence presented at the hearing on the motion to suppress supported the court's conclusions on the credibility and weight of the testimony relating to the voluntary nature of the defendant's statements.

EVIDENCE
A three-tiered analysis governs the Fourth Amendment's application to interactions between citizens and police. At the first tier, mere communications between officers and citizens implicate no Fourth Amendment concerns where there is no coercion or detention. State v. Pennison, 99-0466, pp. 7-8 (La.App. 1st Cir.12/28/99), 763 So.2d 671, 676, writs denied, XXXX-XXXX (La.10/27/00), 772 So.2d 122, 2000-2308 (La.10/27/00), 772 So.2d 658, XXXX-XXXX (La.11/3/00), 772 So.2d 663.
At the second tier, the investigatory stop recognized by the United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the police officer may briefly seize a person if the officer has an objectively reasonable suspicion, supported by specific and articulable facts, that the person is, or is about to be, engaged in criminal conduct or is wanted for past criminal acts. Louisiana Code of Criminal Procedure article 215.1(A) provides that an officer's reasonable suspicion of crime allows a limited investigation of a person. However, reasonable suspicion is insufficient to justify custodial interrogation even though the interrogation is investigative. Pennison, 99-0466 at p. 8, 763 So.2d at 676.
Lastly, at the third tier, a custodial "arrest," the officer must have "probable cause" to believe that the person has committed a crime. Louisiana Code of Criminal Procedure article 213(3) uses the phrase "reasonable cause."[3] The "probable cause" or "reasonable cause" needed to make a full custodial arrest requires more than the "reasonable suspicion" needed for a brief investigatory stop. Pennison, 99-0466 at pp. 8-9, 763 So.2d at 676.
The Louisiana Supreme Court has recognized that in regard to brief investigatory stops, the level of suspicion required to justify the stop need only rise to the level of some minimal level of objective justification. In determining whether sufficient suspicion existed for the stop, a reviewing court must consider the totality of the circumstances, giving deference to the inferences and deductions of a trained police officer that might well elude an untrained person, while also weighing the *155 circumstances known to the police, not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement. See State v. Huntley, 97-0965, p. 3 (La.3/13/98), 708 So.2d 1048, 1049 (per curiam).
There was also no abuse of discretion in the trial court's denial of the motion to suppress evidence. There was at least a minimal level of objective justification for the Terry stop of the defendant, and thus, the stop was constitutional. The stop was founded upon objectively reasonable suspicion supported by specific and articulable facts, i.e., the description of the robber and his distinctive clothing, and that the defendant was wanted for the robbery of the victim. In a diligent attempt to pursue a means of investigation that was likely to quickly confirm or dispel the suspicions of the police that the defendant was the robber, the defendant was taken to the crime scene for the victim to view. See United States v. Sharpe, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985). The objectively reasonable suspicion ripened into probable cause to arrest when the victim identified the defendant as the robber. Thereafter, the evidence in the defendant's pockets was discovered in connection with a search incident to a lawful arrest. See State v. Howard, XXXX-XXXX, pp. 8-9 (La.App. 1st Cir.3/28/02), 814 So.2d 47, 52-53, writ denied, XXXX-XXXX (La.5/16/03), 843 So.2d 1120.
This assignment of error is without merit.

SIMULTANEOUS PEREMPTORY CHALLENGES AND EQUAL PROTECTION
In assignment of error number 2, the defendant contends the trial court erred in using simultaneous challenges, urging that the Twenty-Second Judicial District Court had not established a single method of challenging jurors in accordance with La.Code Crim. P. art. 788. The defendant contends the court's erroneous use of a simultaneous challenge procedure deprived him of the twelve peremptory challenges allowed by La.Code Crim. P. art. 799 when two prospective jurors were challenged by both the defense and the State and "counted" as a peremptory challenge to both. In assignment of error number 3, the defendant contends the lack of a system of exercising peremptory challenges denies criminal defendants equal protection in the Twenty-Second Judicial District Court. The State contends that the Twenty-Second Judicial District Court had indeed adopted a system of simultaneous exercise of peremptory exceptions.
Louisiana Code of Criminal Procedure article 788 provides:
A. After the examination provided by Article 786, a prospective juror may be tendered first to the state, which shall accept or challenge him. If the state accepts the prospective juror, he shall be tendered to the defendant, who shall accept or challenge him. When the state and the defendant accept a prospective juror, he shall be sworn immediately as a juror. This Article is subject to the provisions of Articles 795 and 796.
B. If the court does not require tendering of jurors, it shall by local rule provide for a system of simultaneous exercise of challenges.
Effective July 1, 2003, Rules for Louisiana District Courts and Numbering Systems for Louisiana Family and Domestic Relations Courts and Juvenile Courts, Rules for Criminal Proceedings in District Courts, Rule 19 provided:
As authorized by La.Code of Crim. Proc. art. 788, a system of simultaneous exercise of peremptory challenges is *156 hereby adopted for those district courts shown in Appendix 18. At the conclusion of the examination of prospective jurors as provided in La.Code of Crim. Proc. art. 786, those prospective jurors who have not been excused for cause shall be tendered to the state and the defendant or defendants for simultaneous exercise of peremptory challenge in writing. State and defense challenges of same prospective juror(s), will be considered an exercise of a challenge by both the state and the defense.
Appendix 18 provides that simultaneous peremptory exceptions are allowed in the Twenty-Second Judicial District Court at the trial judge's discretion.
During voir-dire examination of the first panel of prospective jurors, defense counsel objected to simultaneous challenges, arguing that the challenges required him to use a challenge even though the State may have used the same challenge. The trial court noted the Louisiana Code of Criminal Procedure allowed simultaneous challenges, and in the Twenty-Second Judicial District Court, by vote, they were permitted in each trial judge's discretion. The court indicated simultaneous challenges would be used in the instant case. The peremptory challenge sheets of the State and the defense both challenged prospective juror # 143, Ginger Latour, and prospective juror # 177, Richard Norris.
During voir-dire examination of the second panel of prospective jurors, defense counsel re-urged his objection to simultaneous challenges, arguing that letting each judge decide whether to use simultaneous challenges violated the equal protection of the law in that defendants randomly assigned to different court divisions received different standards. The court indicated it had noted the objection, but disagreed with defense counsel. The defense exhausted its peremptory challenges prior to the completion of jury selection.
There was no error in overruling the defense objections to use of simultaneous peremptory challenges in this case. Pursuant to La.Code Crim. P. art. 788(B), the Twenty-Second Judicial District Court provided for a system of simultaneous exercise of challenges and the trial court used that system in this case.[4]
These assignments of error are without merit.

CONVICTION BY NON-UNANIMOUS VERDICT
In assignment of error number 4, the defendant contends he was convicted by a non-unanimous verdict in violation of the United States Constitution. He argues La. Const. art. I, § 17 and La.Code Crim. P. art. 782(A) are unconstitutional pursuant to Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); and Jones v. U.S., 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999).
*157 La. Const. art. I, § 17(A) and La.Code Crim. P. article 782(A) provide that cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. The punishment for first degree robbery is necessarily confinement at hard labor. La. R.S. 14:64.1(B). The instant case was tried before a twelve person jury, ten of whom voted to convict the defendant of the offense.
Under both state and federal jurisprudence, a criminal conviction by a less than unanimous jury does not violate a defendant's right to trial by jury specified by the Sixth Amendment and made applicable to the states by the Fourteenth Amendment. See Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972); State v. Belgard, 410 So.2d 720, 726 (La.1982); State v. Shanks, 97-1885, pp. 15-16 (La.App. 1st Cir.6/29/98), 715 So.2d 157, 164-165.
The defendant's reliance upon Blakely, Ring, Apprendi and Jones is misplaced. Those decisions do not address the issue of the constitutionality of a non-unanimous jury verdict; rather, they address the issue of whether the assessment of facts in determining an increased penalty of a crime beyond the prescribed statutory maximum is within the province of the jury or the trial judge, sitting alone. They stand for the proposition that any fact (other than a prior conviction) that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. See Apprendi v. New Jersey, 530 U.S. at 490, 120 S.Ct. at 2362-2363. Nothing in the referenced decisions suggests that the jury's verdict must be unanimous for a defendant's sentence to be increased. Accordingly, Louisiana Constitution article I, § 17(A) and La.Code Crim. P. art. 782(A) are not unconstitutional and, hence, not violative of the defendant's Sixth Amendment right to trial by jury.
This assignment of error is without merit.

DECREE
For the foregoing reasons, we affirm the defendant's conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] In determining whether the rulings on the defendant's motions to suppress were correct, we are not limited to the evidence adduced at the hearing on the motions. We may also consider all pertinent evidence given at the trial of the case. State v. Chopin, 372 So.2d 1222, 1223 n. 2 (La.1979).
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] The "reasonable cause" standard of Article 213(3) is equivalent to "probable cause" under the general federal constitutional standard. To read Article 213 as allowing an arrest on less than probable cause would put the article afoul of the Fourth Amendment. Pennison, 99-0466 at p. 8 n. 5, 763 So.2d at 676 n. 5.
[4] See also State v. Lockhart, 629 So.2d 1195, 1201 (La.App. 1st Cir.1993), writ denied, 94-0050 (La.4/7/94), 635 So.2d 1132 ("Although the Louisiana Constitution grants to a criminal defendant the right to challenge jurors peremptorily, it does not give him the right to a specified number of challenges. The discretion to fix the number of challenges has been given to the legislature. State v. Bennett, 454 So.2d 1165, 1174 (La.App. 1st Cir.), writ denied, 460 So.2d 604 (La.1984). See also La. Code Crim. P. art. 799. Accordingly, we find that a system of exercising simultaneous peremptory challenges specifically provided in a local rule pursuant to Article 788 B does not violate Louisiana Constitution Article 1, § 17.")